In the Matter of KLP, INC., d/b/a Mc-
Donald's Home Entertainment Center
and McDonald's Magnavox Home Enter-
tainment Center, Debtor.

FINANCEAMERICA CORPORATION of
Georgia, Plaintiff,

v.

Jeffrey W. MORRIS, Trustee of the Estate
of KLP, Inc., d/b/a McDonald's Home
Entertainment Center and McDonald's
Magnavox Home Entertainment Center,
Defendant.

Bankruptcy No. 80–0582A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Nov. 28, 1980.

Frank L. Wilson, Harland, Cashin & Da-
vis, Atlanta, Ga., for plaintiff.

Jeffrey W. Morris, Hurt, Richardson,
Gardner, Todd & Cadenhead, Atlanta, Ga.,
for defendant.

MEMORANDUM IN SUPPORT
OF JUDGMENT

A. D. KAHN, Bankruptcy Judge.

In this Chapter 7 proceeding, Plaintiff
seeks (1) an order lifting the stay of
§ 362(a) of the Bankruptcy Code and (2) a
turnover order requiring the Defendant–
Trustee to deliver to Plaintiff certain goods
in his possession. The Defendant–Trustee
moved to dismiss the proceeding, and the
court indicated, by previous order, that it
will treat the motion as a motion for sum-
mary judgment. For the reasons outlined
below, the court is inclined to grant the
Trustee's motion, thereby resolving the
matter.

The facts of the case are not in dispute.
It seems that an employee of Plaintiff,
which is apparently in the lending business,
contacted an employee of the debtor prior
to bankruptcy about the possibility of leas-
ing space from the debtor for the purpose
of storing two organs which had been re-
possessed by Plaintiff from a third party.
After an oral agreement was made, Plain-
tiff delivered the organs to the debtor's
warehouse, which is a place where the debt-
or has traditionally dealt in organs and
related goods. Significantly, at the time of
delivery of the organs, the oral agreement
"was modified ... to allow the Debtor to
secure offers for the purchase of the organs
and to sell the organs subject to the Debtor
obtaining prior approval of the offers and
sale by [Plaintiff]." Plaintiff's Affidavit,
¶ 5.

Shortly after the debtor filed its petition in bankruptcy, Plaintiff filed its complaint seeking recovery of the organs. The Trustee–Defendant responded by contending that his claim to the organs is superior to the claims made by Plaintiff. In support of his position, the Trustee relies upon *Ga. Code Ann.* § 109A–2–326 (UCC § 2–326) and § 544(a) of the Bankruptcy Code. The Bankruptcy Code provision endows Trustees with the status of a hypothetical lien creditor, and the UCC provision gives such a creditor a priority claim over "consignment sellers" who fail to comply with the notice requirements of the section.[1] Since there is no dispute about the fact that Plaintiff failed to comply with those requirements, the question in the instant proceeding is simply whether the transaction between the parties was indeed a "consignment sale."

The applicable UCC provision, § 2–326, is not only one of the more important UCC sections, but is also one of the most unique provisions in the UCC article which governs the sale of goods. The uniqueness of the section lies primarily in the fact that the section applies to transactions which are not true sales at all, since the section governs agreements which somehow provide that "delivered goods may be returned by the buyer even though they conform to the contract." The section's importance lies primarily in the role it plays, along with the notice provisions of article nine, in giving

disclosed claims to property priority over secret claims. To encourage disclosure of *in rem* claims is a central feature of any well–reasoned system of commercial law.

Accordingly, UCC § 2–326 provides that whenever goods are delivered under a contract which allows the buyer to return conforming goods and the goods were delivered "primarily for resale," § 2–326(1)(b), then goods so delivered become "subject to," § 2–326(2), the claims of creditors of the receiving party as long as the goods remain in that party's possession. In such a situation, the delivering party may be referred to as the "consignment seller," and the party receiving the goods may be called the "consignment buyer."

Of particular importance to the instant case is the fact that certain types of transactions are "deemed" by § 2–326(3) to constitute "consignment sales." The statute so characterizes a transaction when the following three circumstances are present:

(1) when goods are delivered for sale,

(2) when the "consignment buyer" maintains a place of business at which he deals in goods of the kind so delivered, and

(3) when the business name of the "consignment seller" is different than the business name of the consignment buyer.

If a transaction is so deemed to constitute a consignment sale, the consignment seller may obtain priority over the consignment

---

1. The UCC consignment provision states, in pertinent part, as follows:

(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a 'sale on approval' if the goods are delivered primarily for use, and

(b) a 'sale or return' if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then

with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the Article on Secured Transactions (Article 9).

*Ga. Code Ann.* § 109A–2–326 (1979).

buyer's creditors only by complying with the notice requirements of UCC § 2–326(3).

In the instant case, the Trustee–Defendant holds the status of an execution lien creditor, pursuant to § 544(a)(1) of the Bankruptcy Code, and the parties agree that Plaintiff did not comply with the notice provisions of UCC § 2–326. Consequently, the sole question is whether the above three elements have been met, thereby causing the parties' transaction to be deemed a consignment sale, or "sale or return."

There is no dispute that the parties use different trade names. Similarly, the debtor maintained a warehouse at which it dealt in goods of the type delivered there by Plaintiff. The question therefore becomes whether the goods (organs) were "delivered for sale."

In its affidavit filed in response to Defendant's motion, Plaintiff admitted that the original oral storage agreement was modified to allow the debtor to solicit offers from third parties to purchase the organs. While such an offer was not to be accepted on Plaintiff's behalf by Defendant until Plaintiff consented, the court considers the organs to have been delivered "for sale," UCC § 2–326(3), since the debtor was authorized to solicit offers. Under these circumstances, one of the purposes behind § 2–326, to subordinate secret consignment seller claims to claims made by creditors of consignment buyers, is indeed implicated. The statute simply seeks to protect those entities which extend credit to consignment buyers from the secret claims of consignment sellers, and an analogy may be drawn between the treatment thereby afforded such innocent creditors and the treatment afforded perfected lienors vis–a–vis unperfected lienors under article nine of the UCC.

Consequently, the above–listed elements of a § 2–326 "deemed" consignment transaction have been met, and Plaintiff's claim to the organs must therefore be considered subordinate to those claims held by the Trustee–Defendant. Under these circumstances, it is unnecessary for the court to determine whether the goods were delivered "primarily for resale," § 2–326(1)(b), because § 2–326(3) "deems" the transaction to be one of consignment.

Supporting authority for such a conclusion in these circumstances is found in a number of jurisdictions. *E. g., In re Bro Cliff*, 8 UCC Rep.Serv. 242 (W.D.Mich. 1970); *In re Bankston*, 3 UCC Rep.Serv. 345 (Bankr.Ct.N.D.Ga.1966). *See also* Annot. 40 A.L.R.3d 1078 (1971).

While authority does exist for the proposition that consignment sellers who are consumers may take priority over creditors of the consignment buyer, *Allgeier v. Campisi*, 117 Ga.App. 105, 159 S.E.2d 458 (1968), such authority is inapposite when merchant–to–merchant transactions are involved, as is the case here.

Accordingly, a judgment granting Defendant's motion is contemporaneously entered herewith.