## SIMMONS FIRST NATIONAL BANK *v.*
## Harold D. WELLS

83-45 650 S.W.2d 236

Supreme Court of Arkansas
Opinion delivered May 9, 1983

*Coleman, Gantt, Ramsay & Cox,* for appellant.

*Gill & Johnson,* by: *Marion S. Gill,* for appellee.

STEELE HAYS, Justice. This suit presents the issue of whether the interest of a secured creditor in the inventory of a grain dealer is superior to that of a rice grower who subsequently deposits his rice with that dealer.

On May 1, 1980, Simmons First National Bank made a loan of $520,000 to Western Rice Mills, Inc., for which Western granted Simmons a security interest in all of its real and personal property, including all inventory and after acquired property. Western defaulted and in September of 1981, a receiver was appointed. Shortly thereafter, Harold Wells intervened, claiming ownership of certain rice and proceeds from the sale of rice, pursuant to a previous agreement with Western.

Wells had dealt with Western for a number of years, the standard arrangement being that Western would buy the rice outright from Wells, would mill it and then sell it. In April and May of 1981, because of financial difficulties, Western could not buy the rice outright from Wells. Wells and Western orally agreed instead that Western would mill the rice for a certain price and then market the rice at an agreed minimum price for Wells. The charge for milling would be

deducted when Western sold the rice, and the remaining proceeds would go to Wells. In the interim, the rice was stored with Western.

The trial court, relying on the rationale of *In Re Sitkin Smelting and Refining, Inc.*, 639 F.2d 1213 (5th Cir. 1981), found the arragement between Wells and Western to constitute a bailment and found Ark. Stat. Ann. § 85-2-326 (Add. 1961)[1] inapplicable. Under this finding, the inventory lien of the bank did not extend to the rice or to the proceeds claimed by Wells.

Simmons argues for reversal that the Chancellor erred in finding that § 85-2-326 was inapplicable to the facts of this case. We agree and find that § 85-2-326 *is* applicable and we reverse as to those grounds.

The Chancellor mistakenly relied on *Sitkin*, whereby he found the arrangement to be a bailment and, apparently,

[1]§ 85-2-326. Sale on approval and sale or return — Consignment sales and rights of creditors. — (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a "sale on approval" if the goods are delivered primarily for use, and

(b) a "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the Article on Secured Transactions (Article 9 [§§ 85-9-101 — 85-9-507]).

found that that precluded the possibility of finding a consignment and § 85-2-326 applicable. We see two flaws in this analysis: first, the *Sitkin* case is factually distinguishable, the main issue there being whether the arrangement was a sale or a bailment. Second, even if a particular arrangement is found to constitute a bailment as opposed to a sale, that does not preclude a finding that there is also a consignment arrangement and, hence, § 85-2-326 is applicable.

In *Sitkin,* the issue was whether the bankruptcy court had erred in determining that possession of film entrusted to a bankrupt metal refiner, Sitkin, should be given to a secured creditor of the refiner rather than to the film manufacturer, Kodak, which had entrusted it to Sitkin. The arrangement between Sitkin and Kodak was basically that Sitkin would retain possession of film waste delivered to it by Kodak. But for Kodak's business purposes, not until the film had been reduced and destroyed and the silver content removed by Sitkin, would Kodak's ownership cease, and at that time a "settlement" would be made as to the amount owed by Sitkin. The court looked at a number of factors surrounding the transaction and found it to be a bailment and not a sale. The court also determined that the transaction was not a "sale or return" within the meaning of § 85-2-326 since the goods were not delivered for resale with an option to return. Although we are not convinced that the court was correct in finding a bailment and not a sale in *Sitkin,* that is irrelevant here.

Whether the arrangement in this case was a bailment or a sale is not determinative of the rights of the parties. Even if under the analysis of *Sitkin,* the trial court found a bailment and not a sale, the question of whether § 85-2-326 is applicable must still be answered. Western could have been a bailee for Wells and at the same time been a consignee under § 85-2-326. We emphasize the following language of § 85-2-326 (3) which we find applicable to this fact situation:

(3) Where goods are *delivered to a person for sale* and *such person maintains a place of business at which he deals in goods of the kind involved, under a name other*

*than the name of the person making delivery,* then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum" . . . .

The comment to this section reinforces the policy indicated by the language of this section:

2. Pursuant to the general policies of this Act which require good faith not only between parties to the sales contract, but as against interested third parties, subsection (3) *resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer* . . . . (our italics).

Here, Wells delivered his goods, the rice, to Western for sale and Western maintained a place of business where it dealt in goods of that kind, under a name other than the name of the person making the delivery, Wells. With regard to the rights of creditors, it is irrelevant whether the transaction between the two parties was a bailment or a sale if the provisions of § 85-2-326 (3) are also satisfied.

We find *In Re KLP, Inc. Finance Co. of America* v. *Morris,* 7 BR 256 (Bankr. N.D. Ga. 1980) more analogous to our case and it provides a more appropriate and clearer application of § 85-2-326. In *KLP,* the plaintiff had leased space from the debtor to store two organs. The organs were delivered to the debtor's warehouse where the debtor had traditionally dealt in organs and related goods. At the time of delivery, the agreement was modified to allow the debtor to secure offers for the purchase of the organs, subject to the debtor obtaining prior approval of the offers and sale by the plaintiff. When the debtor filed for bankruptcy, the plaintiff filed to recover the organs. The court ruled in favor of the Trustee whose status under the Bankruptcy Code is that of a hypothetical lien creditor who would have priority over a consignment seller who failed to comply with the require-

ments of UCC § 2-326. The following passage states the policy and reasoning behind UCC § 2-326.

> The applicable UCC provision, § 2-326, is not only one of the more important UCC sections, but is also one of the most unique provisions in the UCC article which governs the sale of goods. The uniqueness of the section lies primarily in the fact that the section applies to transactions which are not true sales at all, since the section governs agreements which somehow provide that "delivered goods may be returned by the buyer even though they conform to the contract." The section's importance lies primarily in the role it plays, along with the notice provisions of article nine, in giving disclosed claims to property priority over secret claims. To encourage disclosure of in rem claims is a central feature of any well-reasoned system of commercial law.

> Accordingly, UCC § 2-326 provides that whenever goods are delivered under a contract which allows the buyer to return nonconforming [sic] goods and the goods were delivered "primarily for resale," § 2-326 (1) (b), then goods so delivered become "subject to," § 2-326 (2), the claims of creditors of the receiving party as long as the goods remain in that party's possession. In such a situation, the delivering party may be referred to as the "consignment buyer."

> Of particular importance to the instant case is the fact that certain types of transactions are "deemed" by § 2-326 (3) to constitute "consignment sales." The statute so characterizes a transaction when the following three circumstances are present:

>> (1) when goods are delivered for sale,
>> (2) when the "consignment buyer" maintains a place of business at which he deals in goods of the kind so delivered, and
>> (3) when the business name of the "consignment seller" is different than the business name of the consignment buyer.

If a transaction is so deemed to constitute a consignment sale, the consignment seller may obtain priority over the consignment buyer's creditors only by complying with the notice requirements of UCC § 2-326 (3).

The facts of this case require us to examine § 85-2-326 for its applicability. The language of the statute and the commentary convince us that the reasoning of the court in *KLP* is sound. See also, *Bufkor, Inc.* v. *Star Jewelry Co., Inc.,* 552 S.W.2d 522 (Tx. 1977); *Manger* v. *Davis,* 619 P.2d 687 (Utah 1980). Therefore, because we think the theory on which the case was tried would bring it within § 85-2-326, and since there was no evidence or argument that Wells complied with any of the requirements of § 85-2-326 (3) so as to remove him from the provisions of that section, the priority of Simmons' interest would prevail on that issue.

The appellee makes two arguments that should be addressed. First, that for § 85-2-326 to apply, there must have been an actual sale between the consignor and the consignee, which, he submits, is not present here. We find that interpretation is not a correct statement of the law. *KLP* and the other cited cases make this clear by direct implication. The identical issue was dealt with in *General Electric Co.* v. *Pettingell Supply Co.,* 199 N.E.2d 326 (Mass. 1964) and that contention is found to be without merit.

Appellant also argues that Arkansas Act 401 of 1981 (Ark. Stat. Ann. §§ 77-1339 et seq[2]) provides that in a case such as this, the grain warehouseman cannot sell or encumber

---

[2]Pertinent provisions:
§ 77-1339. Definitions.
(b) "Public grain warehousemen" means any person, firm or corporation who operates any building, structure or other protected enclosure used for the purpose of storing grain for a consideration.

§ 77-1340. Title to grain.
Ownership of grain shall not change by reason of an owner delivering grain to a public grain warehouseman, and no public grain warehouseman shall sell or encumber any grain within his possession unless the owner of the grain has by written document transferred title of the grain to the warehouseman. Notwithstanding any provision of the Uniform Commercial Code (Act 185 of 1961 [§§ 85-1-101 et seq.], as

grain in his custody unless the owner has by written document transferred title to the grain to the warehouseman, which was not done in this case. The Act specifically provides that any such transaction without written authorization will be void, notwithstanding any provision of the Uniform Commercial Code to the contrary. Appellant points out, however, that this argument was not raised below and should not be heard on appeal and the record supports that assertion.

Although we may affirm a decision on a legal theory not argued to the trial court, we must have some basis for that result. As we said in *Palmer, et al* v. *Cline,* 254 Ark. 393, 494 S.W.2d 112 (1973), "We must determine the issues upon the record that was made in the trial court. The facts essential to the question now argued were not pleaded in the court below and therefore cannot serve as the basis for a decision in this court." Here, § 77-1339 defines public grain warehouseman as one who operates any building or structure for the *purpose of storing grain* for a *consideration.* Because this was not argued to the trial court, evidence relevant to Act 401 was not sufficiently developed for us to apply the rule that we will affirm the trial court if the correct result is reached, even if reached on an erroneous theory. We have discretion in determining whether an equity case should be reopened for additional proof on the proper theory. *Brizzolara* v. *Powell,* 214 Ark. 870, 218 S.W.2d 728 (1949); *Nakdimen* v. *Atkinson Improvement Company,* 149 Ark. 448, 233 S.W. 694 (1921). We believe the issue here is of sufficient importance to merit retrial on facts developed in light of Act 401.

Reversed and remanded.

---

amended) to the contrary, or any other law to the contrary, all sales and encumbrances of grain by public grain warehousemen are void and convey no title unless such sales and encumbrances are supported by a written document executed by the owner specifically conveying title to the grain to the public grain warehouseman. [Acts 1981, No. 401, § 2, p. ___.]