Jeff MOBLEY and William F. Smith *v.* John
T. HARMON, Ray Lee Robinson, Robert I. Darr
and James A. Hatcher

92-1052                                    854 S.W.2d 348

Supreme Court of Arkansas
Opinion delivered June 1, 1993
[Rehearing denied July 5, 1993.]

*Jeff Mobley* and *William F. Smith*, by: *John Lloyd Johnson*, for appellants.

*Bowden Law Firm*, by: *David O. Bowden*; and *Gilbert Law Firm*, by: *Melinda Gilbert*, for appellee.

*James Dunham*, for appellee/cross-appellants.

ROBERT L. BROWN, Justice. The appellants, Jeff Mobley and William F. Smith, raise multiple points in their appeal from a judgment for attorney's fees in favor of appellee John T. Harmon. The appellees/cross-appellants, Ray Lee Robinson, Robert I. Darr, and James A. Hatcher, also bring a cross-appeal conditioned upon our reversal of the chancery court's order. We affirm the chancery court in this case; the cross appeal is therefore moot.

In 1976, Legacy Lodges, Inc., was a corporation which had a nursing home business as its principal asset. The corporation was owned by four shareholders: appellee/cross-appellant Robert I. Darr (30 percent), James Williams (30 percent), Jeff Mobley (30 percent), and James Hatcher (10 percent). Darr assigned his interest in Legacy Lodges to Ray Lee Robinson.

In July 1976, the appellants' law firm of Mobley & Smith acted as attorneys for the corporation and undertook negotiations for a settlement with Darr and Robinson arising out of the purchase of the assets of Legacy Lodges by Darr and Robinson. Negotiations failed, and on June 15, 1977, Mobley made a motion at a Legacy Lodges Board of Directors meeting to employ his partner, William Smith, to file suit against the two men. The motion passed, and Smith was hired on a fee basis that would allow him one-third of the recovery if the suit was settled out of court, 40 percent of the recovery in the event of a trial, and 50 percent of the recovery in the event of an appeal.

Smith wrote one demand letter. The corporation then determined that the services of another attorney were needed because Mobley, Smith's partner, served as secretary-treasurer of the corporation and was a shareholder and a member of the Board of Directors. On October 5, 1977, Legacy Lodges filed a

complaint in Pope County Chancery Court against Darr and Robinson. Harmon was shown as counsel for the corporation.

On October 21, 1977, at a Legacy Lodges shareholders' meeting James Williams and Jeff Mobley were present, and James Hatcher was present by proxy. Williams, Mobley, and Hatcher were also members of the Board of Directors. Mobley made a motion, seconded by Williams, authorizing Williams to contact Harmon and negotiate a contract of employment on behalf of the corporation based on a fee schedule to be agreed upon by Williams and Harmon.

Harmon was the only attorney of record for Legacy Lodges in the Darr/Robinson litigation. Harmon did preliminary work on the matter but notified Mobley in 1984 that he was leaving the state and the practice of law and that it would be necessary for the corporation to hire another attorney. Negotiations were underway with another attorney to handle the case when, in 1987, Harmon returned to Arkansas and resumed his law practice.

According to testimony, a new contract of representation was entered into in 1987 between Harmon's professional association, John T. Harmon & Associates, P.A., and Legacy Lodges. Its terms were the same as the earlier contract between Smith and the corporation: John T. Harmon & Associates would receive a 50 percent fee if the case were successfully appealed.

Harmon tried the case in chancery court and prevailed against Darr and Robinson. His principal witness was Mobley. The case was appealed to the Arkansas Court of Appeals, and Harmon, through his professional association, John T. Harmon & Associates, P.A., and Attorney William Wharton prepared the brief for Legacy Lodges. Harmon then argued the case before the Court of Appeals. That court affirmed the lower court's decision in favor of the corporation in an unpublished opinion.

Darr and Robinson satisfied the judgment in 1988, at which time a dispute arose between Mobley and Harmon over the apportionment of attorney's fees. Two checks had been made out to the prevailing parties and "their attorney, John T. Harmon" — one in the amount of $310,000 and the other for $21,636.98. Checks were then disbursed to the stockholders, including Mobley. Harmon and Mobley disagreed over the allocation of

attorney fees and agreed to place 50 percent of the funds in two certificates of deposit, totaling $165,722.64, at First National Bank of Russellville, pending the outcome of the dispute. The CD's were put in the names of Harmon's professional association and Mobley.

In a Third Amended Complaint in this matter, an interpleader action was filed by Mobley and Smith in Pope County Chancery Court against Harmon and First National Bank of Russellville. The bank, in its answer, admitted that it was holding the certificates of deposit and that the rights of Mobley and Smith on the one hand and Harmon on the other with regard to the funds needed to be declared. The bank further prayed for an order directing it to pay the funds into the registry of the court. Cross-appellants Darr, Robinson, and Hatcher intervened, claiming that if the court determined Harmon was not entitled to the amount on deposit, the funds belonged to the corporation.

The chancery court in a pre-trial order appointed the Pope County Circuit-Chancery Clerk, Juanita Barber, receiver of the funds held by the bank and further ordered that the certificates of deposit be endorsed and deposited in the bank at the highest interest rate obtainable in order to prevent waste.

Trial was held on May 22, 1992. The chancery court found in favor of Harmon and concluded that a contract of employment existed between Legacy Lodges, Inc., and Harmon for a 50 percent recovery on appeal. The chancery court ordered that the entire fee be paid to Harmon and dismissed the interpleader complaint. A motion for new trial was then filed by the appellants with supporting affidavits, and it was denied by the chancery court.

## I. FEE CONTRACT

For their first point, the appellants, Mobley and Smith, contest the chancery court's Findings of Fact 7 and 15. Those findings read:

> 7. At the stockholder's meeting on October 21, 1977, James Williams and Jeff Mobley were present and Mr. James Hatcher was present by Proxy. Plaintiff, Jeff Mobley, made a motion, seconded by James Williams, authorizing James Williams to contact John T. Harmon.

James Williams had full authority to negotiate the terms of contract of employment and sign such contracts of employment on behalf of the corporation for the fee agreed upon by Williams and Defendant, John T. Harmon. This was evidenced by Plaintiff's Exhibit Number (8) Eight. [Minutes of the October 21, 1977 stockholders' meeting.]

15.   The Court further finds there was a contract of employment between Legacy Lodge, Inc., and John T. Harmon for fifty (50%) percent on appeal as supported by Plaintiff's Exhibit Number (8) Eight, testimony of John T. Harmon, testimony of Ike Allen Laws, Exhibit (26) Twenty-six and Exhibit (29) Twenty-nine of the Plaintiffs.

The appellants claim that the directors of Legacy Lodges did not authorize the contract of employment between the corporation and Harmon or with John T. Harmon & Associates, P.A. They further contend, apparently in the alternative, that even if the stockholders present were acting in their capacities as directors, they curtailed the contractual ability of the president of the corporation in hiring Harmon and limited it to the "specific instance" of defending Legacy Lodges, Inc., in another matter — Pope County Circuit Court Case No. CIV-77-277 — and to filing a counterclaim against Hatcher and a cross-complaint or third-party complaint against Darr. Harmon was not retained, they insist, to prosecute the complaint against Darr and Robinson.

Bolstering the appellants' argument is the testimony of the corporation's president, James R. Williams, who stated that he employed the law firm of Mobley & Smith to sue Darr and Robinson, and that contract was never rescinded. He also averred that he was certain that he never signed a contract with Harmon.

The minutes of the Legacy Lodges stockholders' meeting of October 21, 1977, however, belie the appellants' assertions and support the chancery court findings:

A Motion was made by James Williams and seconded by Jeff Mobley authorizing and instructing Jeff Mobley to maintain contact with William F. Smith and John Harmon, attorneys for Legacy Lodge, Inc., and to insist upon as speedy a disposition as possible of a lawsuit styled Legacy Lodge, Inc. vs. Ray Lee Robinson and Robert I.

Darr. Upon a vote of the stockholders the motion was approved.

A Motion was made by Jeff Mobley, and seconded by James Williams, that John Harmon be employed to represent Legacy Lodge, Inc. in the cause of action filed against Legacy Lodge, Inc., et al. same being Pope County Circuit Case No. 77-277, with full authority to represent Legacy Lodge in that cause of action and any and all future causes of action which may be filed against Legacy Lodge, Inc. of every kind and character with full authority to file any and all necessary lawsuits and counterclaims and specifically a counterclaim against James Hatcher, and a third party complaint or cross-complaint against Robert I. Darr on a[n] $8,000.00 note due Legacy Lodge, Inc. *and any and all other causes of action which exist* or may exist against parties whomsoever that he may deem advisable and necessary. That James Williams be authorized to contact John Harmon with full authority to negotiate the terms of contract of employment and with full authority to sign said contract of employment binding Legacy Lodge, Inc. for John Harmon's attorney fees based upon the agreement reached between he and James Williams and with the said James Williams having full authority to commit any and all future sums which might come into Legacy Lodge's hands from any and all sources necessary to pay the agreed fees from first money received by Legacy Lodge after the payment of Garrett, Jones and Rose's accounting bill and the sum of $500.00 to Elizabeth P. Mobley for accounting work. (Emphasis ours.)

The first paragraph quoted indicates that, contrary to the appellants' assertion, appellee Harmon had been employed as attorney for the corporation in the *Legacy Lodges, Inc.* v. *Darr and Robinson* matter. Further, the highlighted language in the second quoted paragraph clearly shows that Harmon was to be empowered to act as attorney well beyond the scope of Case No. 77-277.

The appellants next claim that Harmon "abandoned this agreement in 1984," but Harmon testified that he terminated his sole proprietorship that year and that he had a written contract

for the subsequent phases of litigation executed in 1987 between Legacy Lodges and his professional association.

That later contract was never produced at trial. However, Ike Allen Laws, Jr., an attorney who represented Robinson and Darr in the underlying action, testified that he actually saw the written contract between Legacy Lodges and John T. Harmon & Associates, P.A., when he met with Mobley at the courthouse to pay off the judgment in 1988. He insisted on seeing the corporation's contract with Harmon because, he said, "that was a pretty big fee and as a result, my client was going to be paying thirty percent of it." Laws described the document as a "standard . . . Arkansas trial lawyers' contract" that provided for a 50 percent fee for Harmon's professional association in the event of a successful appeal. The contract, he stated, was in Mobley's possession. Mobley also told him, Laws stated, that Harmon was owed 50 percent as an attorney's fee.

Although this court reviews chancery cases *de novo*, we will not set aside a chancellor's findings of fact unless they are clearly erroneous. Ark. R. Civ. P. 52(a); *Nunley* v. *Orsburn*, 312 Ark. 147, 847 S.W.2d 702 (1993); *Dudley* v. *Little River County*, 305 Ark. 102, 805 S.W.2d 645 (1991). This oft-repeated principle recognizes the chancellor's superior position to assess the credibility of witnesses. *Medalist Forming Systems, Inc.* v. *Malvern National Bank*, 309 Ark. 561, 832 S.W.2d 228 (1992).

Credibility lies at the heart of this appeal. The contract in question was not produced at court. Two mutually inconsistent accounts were presented instead: Mobley claimed that no contract existed; Harmon claimed that there was a written contract and Laws claimed that he had seen it. The minutes of the October 21, 1977 stockholders' meeting clearly indicate that a contract was to be formed between Legacy Lodges and Harmon for the existing cause of action, as Harmon asserts.

We cannot say, based on the evidence adduced above, that the findings of the chancery court were clearly erroneous in this instance. On the contrary, we hold that they were supported by substantial evidence.

## II. EXISTENCE OF WRITTEN CONTRACT

Nor can we say that the chancery court's Finding of Fact 11 was clearly erroneous. There, the chancellor found that Mobley had shown attorney Ike Allen Laws the contract between Harmon's professional association and Legacy Lodges, and based on seeing that contract, Laws delivered two checks made payable to Legacy Lodges and to Harmon to satisfy the obligation of Robinson and Darr.

This issue has been largely addressed in the previous point. Again, the crux of this matter is a credibility question entrusted to the chancellor. Laws's testimony was contradicted by Mobley and corporation president James R. Williams, who stated flatly at trial that "I am certain that I never signed a contract with Mr. Harmon. . . ." In an affidavit in support of a post-trial motion to reconsider the judgment or grant a new trial, Williams again denied that he ever signed a contract with Harmon. The chancery court clearly found Laws and Harmon to be more credible.

Harmon did represent Legacy Lodges up through the appeal in *Darr* v. *Legacy Lodges, Inc.* An attorney who appears in court is presumed to be authorized to represent the client. *Potter* v. *First National Bank*, 292 Ark. 74, 728 S.W.2d 167 (1987); *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). Even if Harmon merely "guessed" he was re-employed in 1987, Legacy Lodges provided him with every reason to make that assumption. There is not a shred of evidence that Legacy Lodges did not want Harmon to proceed with the case in 1987; indeed, the indications are that Harmon was urged to forge ahead with the trial of the matter and then to protect the corporation's interest in the appeal.

The appellants further contend that Harmon made "binding admissions" in which he disavowed any interest — personal, financial, or legal — in the lawsuit, as opposed to his professional association, and that he, accordingly, is not entitled to the fee. This argument was not presented to the chancery court in this form, and we will not consider arguments raised for the first time on appeal or where a ruling from the trial court has not been obtained. See *Viking Insurance Co.* v. *Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992); *Gatlin* v. *Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991).

## III. CONFLICT OF INTEREST

The appellants next contest Finding of Fact 13, which reads:

13. From the testimony, it is clear to the Court that Plaintiff, Jeff Mobley, had a conflict of interest in the Chancery Court case as he was an attorney, stockholder and director of Legacy Lodge, Inc. The question has been addressed by the Arkansas Supreme Court on several occasions. In *Boling Administration (sic)* vs. *Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979), the Court held that when an attorney is called as a witness during a trial, he is part of it, and held it was improper for an attorney to testify on the merits of the case when an associate continued in the trial. The Court stated that an attorney must decide to be an attorney or a witness. That ruling was re-affirmed in *Enzor* vs. *State*, 262 Ark. 545, [559] S.W.2d [148] (1977). Therefore, it is clear from the evidence that Plaintiff, Jeff Mobley, was a witness, and that Plaintiff, William Smith, is also disqualified because Mr. Mobley and Mr. Smith are partners in the practice of law.

The appellants urge that the chancery court committed error in making this finding because the court had disallowed the introduction of portions of the Arkansas Rules of Professional Conduct or the Model Rules of Professional Conduct into evidence at trial. Yet, the appellants contend, the court based its decision on those same Professional Rules.

We note, initially, that nowhere in Finding of Fact 13 is there mention of the Rules of Professional Conduct. Instead, the chancery court referred to Arkansas case law to the effect that there is an inconsistency in the function 1) of an advocate to advance or argue the cause of another and 2) of a witness to state facts objectively. *Boling* v. *Gibson, supra.* Both cases cited by the court expressed strong disapproval of an attorney's testifying in an action in which he is an advocate. "An attorney who is to testify in an action," we said in *Enzor* v. *State, supra*, "should withdraw from the litigation." 262 Ark. at 551, 559 S.W.2d at 151.

At trial, the chancery court also discussed its understanding of *Aetna Casualty & Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983). In that case, we relied on the

American Bar Association Code of Professional Responsibility (then operative) for the view that, in the instance of a contingent fee agreement, an attorney "may testify and also share in the fee, provided he completely withdraws from participation in the case other than as a witness." 281 Ark. at 137, 664 S.W.2d at 467. We also reiterated that a testifying attorney becomes both "advocate and witness, one of which requires the lawyer to be partisan and the other of which requires him to be factual." 281 Ark. at 136, 664 S.W.2d at 467; *quoting Rushton* v. *First National Bank of Magnolia*, 244 Ark. 503, 426 S.W.2d 378 (1968). We then said that when an attorney fills both roles, it robs the trial of the appearance of fairness.

In sum, while the decisions of this court relied upon by the chancery court may have invoked Rules of Professional Conduct, the Rules were not the basis for the court's decision. Rather, the chancery court predicated its conclusion on the holdings in our case law. The appellants' argument is without merit.

## IV. KNOWLEDGE OF POTENTIAL CONFLICT

The chancery court's Finding of Fact 14 states:

14. That Plaintiff, Jeff Mobley, knew that he was a witness prior to John T. Harmon's filing of the Legacy Lodge, Inc. lawsuit. Therefore, Plaintiff, Jeff Mobley, can not participate in the contingent fee arrangement nor could his associate, plaintiff, William Smith. In *Aetna Casualty & Surety Co.* vs. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984) (sic), . . . the Court, with a split decision, allowed an attorney . . . to receive a contingent [fee.] . . . Because in that case, the witness, an attorney, testified that he did not know that he would be a witness until after the agreement was made. Even then, the Court stated that the attorney must completely withdraw from participation other than as a witness. In this case, Plaintiff, Jeff Mobley, continued to participate behind the scenes as previously set forth in the findings of the Court.

In appellant William F. Smith's testimony, the following concession appears:

I was employed by Legacy Lodge as their attorney to

represent them.. . . . Mr. Mobley and I discussed the claim at case (sic). We decided that there was a potential, and I quote, potential, that Mr. Mobley could be called as a witness.. . . . There would be the problem of Mr. Mobley trying the case and being a witness also. This presented a presentation problem as far as I was concerned. It presented a presentation problem for me being his law partner.. . . . We discussed this, discussed who we would might want to associate with us in this case. We had had associations with Mr. Harmon in the past, we had worked on cases in the past. He suggested Mr. Harmon. It was Mr. Mobley that suggested him. We contacted Mr. Harmon and he came to Russellville, Arkansas.

It was obvious to Smith and Mobley in 1977, prior to the corporation's hiring of Harmon, that at the very least a "potential" existed for Mobley to be called as a witness and that this presented a problem for the firm's representation.

As the chancellor noted, this situation is governed by *Aetna Casualty & Surety Co.* v. *Broadway Arms Corp.*, *supra*. That case held that it is permissible for an attorney to testify and share in the contingent fee where he completely withdraws from all other participation in the case and where the contingent fee agreement "was entered into prior to the time the attorney *had any idea* he would be a witness." 281 Ark. at 135, 664 S.W.2d at 467. (Emphasis added.) That is not the situation in the case before us. Mobley and Smith clearly were aware of the potential for Mobley's conflicting roles, and this was the catalyst for Harmon's being hired. Moreover, Mobley did not completely withdraw. He continued to be involved significantly in the legal representation by assisting Harmon informally. The chancery court's finding was not clearly erroneous on this point.

## V. QUANTUM MERUIT

At trial, Mobley stated that Harmon, Smith, and he had orally agreed in 1977 to split any attorney's fee by thirds, with one portion going to Smith, another to Harmon, and the third to Mobley himself. On this basis, the appellants assert that Harmon should have been awarded a *quantum meruit* or one-third fee rather than the entire amount. The argument is not convincing because the question of a one-third oral agreement was disputed

by Harmon and because, even if it had been made, it was superseded by the subsequent, written contract in 1988 whose existence was testified to by Harmon and Laws.

The other issues raised are rendered moot by this opinion.

Affirmed.

HAYS, J., not participating.