**In re TRUCK ACCESSORIES DISTRIBUTING, INC.,**
Debtor.

Bankruptcy No. 98–31730M.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Sept. 1, 1999.

Jeannette A. Robertson, Jonesboro, AR, for debtor.

Chet Dunlap, Trumann, AR, for Homestead Products, Inc.

Anita Perkins Leonard, Jonesboro, AR, for Union Planters Bank N.A.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On December 22, 1998, Truck Accessories Distributing, Inc. ("Debtor") filed a voluntary petition for relief under the provisions of chapter 7. James Luker, Esq., was duly appointed trustee.

On March 15, 1999, Union Planters Bank, N.A. ("Union Planters") filed a motion for relief from the automatic stay to foreclose a perfected security interest in all of the Debtor's inventory. On March 16, 1999, Homestead Products ("Homestead") also filed a motion for relief from the automatic stay. Homestead alleged that it was the owner of certain truck bedliners and rails in the Debtor's possession pursuant to a warehousing agreement with the Debtor and that these items were not property of the estate.

Union Planters filed a response to Homestead's motion, alleging that the truck bedliners and rails were part of the Debtor's inventory and were subject to Union Planters' perfected security interest. Homestead responded to Union Planters, claiming that Union Planters' security interest was not perfected for several reasons, including the fact that the financing statements were seriously misleading because the Debtor's name was incorrectly listed.[1]

Trial was held in Jonesboro, Arkansas, on April 23, 1999, and the matter was taken under advisement. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). The Court has jurisdiction to enter a final judgment in this case.

### FACTS

Homestead is a corporation located in Coleman, Michigan, which manufactures bedliners and rail guards for pick-up trucks. The Debtor was engaged in the wholesale and retail business of selling

---

1. Homestead did not pursue this argument in its brief, and nothing contained in the evidence submitted appears misleading.

truck accessories, including truck bedliners and rail guards.

In previous years, the Debtor purchased bedliners from Homestead for resale in the Debtor's business. In November 1997, the Debtor and Homestead discussed a proposal whereby the Debtor would become a "warehousing agency" for Homestead. Under the proposal, the Debtor would buy products from Homestead for resale to the Debtor's customers and would also ship the products to other of Homestead's customers. No agreement was reached until the parties discussed the proposal at a later time in Nashville, Tennessee.

The Debtor reduced the proposal to a letter to Homestead, which outlined the terms as follows:

1. The Debtor, acting as a warehouse, would keep Homestead's product in a separate building from Debtor's working inventory.

2. Homestead's product would be placed in the Debtor's warehouse on a consignment basis. The product would be shipped by Debtor at Homestead's direction and the cost of shipping would be billed by the common carrier to Homestead.

3. Any of Homestead's product that was sold by the Debtor would be pulled from the warehouse, and remittance from the Debtor to Homestead would be on a weekly basis.

4. The Debtor would assess Homestead a 5% warehousing fee and a 5% handling fee. (Pl.'s Ex.1.)

The terms of the letter were agreed to and the parties commenced doing business. Homestead shipped its product thereafter to the Debtor's place of business in Jonesboro. The warehouse where the product was stored is in a separate building from Debtor's business premises, but only at a few feet distance. The warehouse also has a different street address from the adjacent business premises, but is readily accessible to the business premises.

The parties transacted business as agreed through 1998, although no warehousing fee or handling fee was ever assessed. Most of Homestead's product was kept separate from the Debtor's other inventory, although some of the bedliners belonging to Homestead were comingled with the Debtor's regular inventory. Approximately 90% of the transactions were sales by the Debtor from the inventory and 10% were sales to third parties at the direction of Homestead.

Previously, on March 19, 1998, the Debtor executed two promissory notes in favor of Union Planters in the principal sums of $257,730.04 and $25,000.00 respectively. The Debtor also executed a security agreement granting a security interest to Union Planters in all inventory now or hereinafter acquired by the Debtor. Union Planters filed financing statements on April 10, 1998, with the Secretary of State and with the Circuit Clerk of Craighead County, Arkansas.

On the date the bankruptcy petition was filed, the balance due on Union Planters' claim was about $280,000.00. Union Planters estimates that the debt exceeds the value of the Debtor's inventory.[2]

The value of the inventory on consignment from Homestead is approximately $50,000.00. Union Planters claims that its floating security interest attached to the consigned goods and asks for relief from the stay to foreclose its interest. Homestead asserts that Union Planter's lien did not attach to the bedliners because this inventory was held under a bailment relationship and, therefore, the Debtor did not have sufficient legal title to grant a security interest to Union Planters.

## DISCUSSION

Arkansas' version of the Uniform Commercial Code as it pertains to consignment sales and the rights of creditors governs

2. The Trustee has filed no opposition to Union Planters' motion for relief.

the issue presented in this case. The relevant section of the Arkansas Code provides in part as follows:

(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

    (a) A "sale on approval" if the good are delivered primarily for use; and

    (b) A "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions under this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery:

    (a) Complies with subsection (6) of this section providing for a consignor's interest or the like to be evidenced by a sign; or

    (b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

    (c) Complies with the filing provisions of the chapter on secured transactions (§ 4–9–101 et seq.).

Ark.Code.Ann. § 4–2–326(3) (Michie 1987 & Supp.).

■ Pursuant to section 2–326(3), a transaction in goods is deemed to be on a sale or return basis if three conditions are satisfied: (1) the goods are delivered to a person for sale; (2) that person maintains a place of business at which he deals in goods of the kind involved; and (3) he deals under a name other than the name of the person making delivery. *First State Bank v. Miller (In re Miller)*, 119 B.R. 660, 664 (W.D.Ark.1990).

■ Under the statute, goods held in the buyer's possession on sale or return are subject to the claims of the buyer's creditors. Ark.Code Ann. § 4–2–326(2) (Michie 1987 & Supp.). This is so even if the relationship between the parties is in the nature of a bailment or consignment rather than a conventional sale. *Simmons First Nat'l Bank v. Wells*, 279 Ark. 204, 209, 650 S.W.2d 236, 239 (1983) (stating that, with regard to the rights of creditors, it is irrelevant whether the transaction between the two parties was a bailment or a sale if the provisions of section 4–2–326(3) are satisfied).

■ A consignor or bailor may protect himself from having his delivery of goods deemed a sale or return and subject to the buyer's creditors in one of three ways. He may comply with an applicable sign law, establish that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or comply with the filing provisions of Article 9. Ark.Code Ann. § 4–2–326(3)(a–c) (Michie 1987 & Supp.); *First State Bank v. Miller (In re Miller)*, 119 B.R. 660, 664 (W.D.Ark.1990).

■ Section 4–2–326(3) is designed to prevent creditors from being misled by a hidden lien. *In re Miller*, 119 B.R. at 664 (quoting *In re Key Book Serv., Inc.*, 103 B.R. 39, 43 (Bankr.D.Conn.1989) and citing *In re Monahan & Co.*, 29 B.R. 579, 583 (Bankr.D.Mass.1983)). The policy underlying this statute and its interpretation by bankruptcy courts has been explained as follows:

The basis for this hostility to consignment arrangements from the bankruptcy courts is fairly obvious. Regardless of the legal theory of the consignment, in practical operation it looks like a sales transaction in which the unpaid seller retains a secret lien in his goods. From a creditor's point of view, the consigned goods appear to be part of the regular inventory of the consignee which, therefore, ought to be subject to their claims. What is more, unlike a pre-code chattel mortgage, there is no public filing or other notoriety respecting the consignment to warn the creditors that the consignor may have rights in the goods which are superior to theirs.

The [UCC] code drafters were apparently much impressed that the consignment situation could be terribly misleading to creditors of the consignee. So, while the Code permits the consignment transaction to continue, it declares that the consignment will be valid as against creditors only if there is some way by which creditors can learn of the consignment.

*In re Miller,* 119 B.R. at 664 (quoting *In re Gross Mfg. & Importing Co.,* 328 F.Supp. 905, 909 (D.N.J.1971) and *In re Monahan & Co., Ltd.,* 29 B.R. 579, 583 (Bankr.D.Mass.1983) (quoting Shanker, "Bankruptcy, and Article 2 of the Uniform Commercial Code," 40 J.Nat'l.Conf.Ref. Bankr.2)). *Accord, Medalist Forming System v. Malvern Nat'l Bank,* 309 Ark. 561, 567–68, 832 S.W.2d 228, 231 (1992); *Simmons First National Bank v. Wells,* 279 Ark. 204, 210, 650 S.W.2d 236, 239 (1983).

■ Here, the facts establish transactions between Homestead and the Debtor that are deemed to be on a sale or return basis as described in section 4–2–326(3). The goods were delivered by Homestead to the Debtor's place of business primarily for sale, since 90% of the inventory held by the Debtor was resold by the Debtor. Furthermore, the Debtor dealt in goods of the kind involved in the transactions between the Debtor and Homestead, and the Debtor conducted business under a name different than that of Homestead. Therefore, with respect to the Debtor's creditors, the goods at issue are deemed to be on a sale or return basis even if the relationship between the parties was in the nature of a consignment or bailment.

■ Homestead argues that the goods delivered to Debtor were not delivered to Debtor's place of business for purposes of section 4–2–326 because the goods were stored in a warehouse with a different street address from Debtor's place of business. This argument lacks merit. Even though it had a different street address, the warehouse was immediately adjacent to the building where the Debtor conducted his retail business, and access was gained by simply walking through a door only two or three feet away. The evidence supports the conclusion that both buildings constituted the Debtor's place of business.

■ Homestead did not avail itself of the procedures required by statute to protect its interest in the consigned goods from creditors of the Debtor. It did not post a sign evidencing its interest in the goods, establish that the Debtor was generally known by its creditors as substantially engaged in selling the goods of others, or comply with the state's filing provisions related to secured transactions.

Therefore, since Homestead did not comply with the provisions of section 4–2–326, the transaction is deemed a sale or return, and Union Planters' security interest attached. *Medalist Forming System v. Malvern Nat'l Bank,* 309 Ark. 561, 568, 832 S.W.2d 228, 231 (1992). The motion for relief from stay filed by Union Planters is granted, and the Trustee is directed to abandon the inventory in question to Union Planters.

IT IS SO ORDERED.