BROOKS v. STATE.

Opinion delivered January 28, 1905.

1. BIGAMY—SCIENTER.—An instruction in a bigamy case to the effect that if the jury found that defendant married a woman while she was lawfully married to another man, they should find him guilty, unless they believed that he "in good faith" acted without knowledge of the fact that he was marrying the wife of another man, was erroneous in permitting a conviction without proof that he knowingly married another man's wife, if it was shown that his ignorance thereof was not based on good faith. (Page 61.)

2. SAME—ACTUAL KNOWLEDGE.—It was error to instruct that it was not necessary, in order to sustain a conviction of bigamy, to prove that defendant had actual knowledge that the woman he was marrying was the wife of another; that if he was in possession of sufficient facts which would cause him to believe it probable that she was married, it was his duty to investigate; and that if he acted without investigation, he would be guilty. (Page 61.)

Appeal from Conway Circuit Court.

WILLIAM L. MOOSE, Judge.

Reversed.

*Sellers & Sellers,* for appellant.

As to the elements of the crime of bigamy, and the rule as to proof or presumption of intent, see: 34 Ark. 511. The alleged first marriage was not proved. When this fact is sought to be established by the evidence of persons present at the marriage, such testimony must show, not only the fact of the solemnization of the marriage, but the official character of the person performing it. The appellation of "squire" prefixed to the name of the person who performs a ceremony is not sufficient evidence of his official character. 6 Am. & Eng. Enc. Law, 872; 19 Mo. 155; 29 Vt. 60; 24 Am. Dec. 64; 29 Gratt. 800; 50 Ga. 150; 10 N. H. 347; 59 *Id.* 446; 10 East, 282; 14 N. H. 480. *Cf.* also 38 Ark. 158; 1 Gr. Ev., § 563g. The evidence in this case does not even establish a good common-law marriage. 156 Ill. 511. Strict proof of the elements of a common-law marriage should be required, where it is relied upon as a basis of such a prosecution as is here brought. 156 Ill. 511; 16 Ill. 85; 25 N. Y. 390. The first instruction given by the court is abstract and erroneous. 54 Ark. 336; 41 Ark. 392; 42 Ark. 57; 22 S. W. 160; 2 Ark. 308; 16 Ark. 651; 69 Ark. 380; 63 Ark 108; *Ib.* 177. The court erred in refusing the fifth instruction asked by appellant. 19 Am. & Eng. Enc. Law, 40, 48; 59 Ark. 431; 1 Wis. 187; 71 Ark. 399; 83 S. W. 929. Instructions for the State numbers 1 and 11 are erroneous. 3 S. W. 661; 8 S. W. 667; 15 Gray, 195; 13 R. I. 281. The second instruction for the State is also erroneous. 124 U. S. 374; 12 Am. & Eng. Enc. Law, 530, note 1; 53 Ark. 393; 59 Ark. 105; 81 S. W. 603.

*Robert L. Rogers, Attorney General,* for appellee.

Evience of cohabitation as man and wife should be accepted to aid in establishing a marriage. 7 Gill, 247; 72 Mich. 184; 94 Tenn. 86. There was no error in the second instruction. 1 Bish. New Cr. Law, 173.

HILL, C. J. Charley Brooks was convicted of the crime of knowingly marrying the wife of another, he being an unmarried man. The crime and its punishment is defined in sections 1593, 1594, Kirby's Digest. The last marriage, identity of the parties and other material averments were established beyond question, and the guilt turned on whether the defendant knew that the woman he married was the wife of another. He contended that both the woman and her alleged husband told him that they were not married. Their cohabitatian as husband and wife, which was admitted, was therefore meretricious, and the child born to them, illegitimate. On the other hand, the husband, or paramour, as the case may be, testified that he and the woman were married by "Squire Patillo" in Cass County, Texas. No evidence is offered as to the official character of the celebrant of the service, other than this designation of him as "Squire."

Counsel for the appellant and the Attorney General have exchanged pleasantries and witticisms over the effect to be ascribed to the title of "Squire." As the connection in which the term is used indicates that he was a justice of the peace, and as there is some evidence tending to prove a common-law marriage, which is recognized as valid in Texas (see cases cited, p. 7859, vol. 4, Complete Texas Digest of 1904), the court would not disturb the verdict on the insufficiency of the evidence of the former marriage; but, as the case has to be reversed, attention is called to the scantiness of the proof on this issue. If "Squire" Patillo was a justice of the peace, the evidence can easily be made by the witnesses who knew him, and, if he was not, an inference should not be drawn that he was.

The first and second instructions, which the Reporter will set out in the statement of facts, are erroneous.*

---

*The first and second instructions complained of and referred to in the opinion were s follows;

"1. You are instructed that if you find from the evidence that Dan Coley and Belle Spence were lawfully married, and thereafter, during the existence of said marriage relationship, the defendant, Charles Brooks, and the said wife of Dan Coley, to-wit, Belle Coley, were married in Conway County, Arkansas, as charged in the indictment, then it will be your duty to return the defendant guilty, unless you believe from the evidence that he, in good faith, acted without knowledge of the fact that he was marrying the wife of the said Dan Coley.

The first one tells the jury if they found the first marriage legal, and the marriage of defendant to the woman, they were to find the defendant guilty, unless they believed that he, in good faith, acted without knowledge of the fact that he was marrying the wife of another man. The statute puts the burden on the State to prove that he knowingly married another man's wife, and this instruction, down to the proviso beginning with "unless," ignores that feature of it, and then inserts good faith as a qualification to want of knowledge, and makes the whole instruction appear as if he could be convicted by mere proof of the two marriages unless he proved that he had in good faith possessed ignorance of the former marriage. It is not supposed that the judge so intended it, but it is unfortunately phrased, and is apt to lead to misconception.

The second instruction is clearly erroneous. In effect, it tells the jury that it was not necessary for the defendant to have actual knowledge that the woman he was marrying was the wife of Dan Coley, if he was in possession of sufficient facts and circumstances which would cause him to believe it probable that Dan Coley and the woman were husband and wife. That he was chargeable with such knowledge, and it was his duty to investigate in good faith, and endeavor to learn whether they were husband and wife; and if, in possession of such facts and circumstances, he acted without investigation, that he would be guilty.

This exact question was decided in the Court of Queen's Bench in a prosecution for bigamy, and the conclusion of the court was thus stated by Chief Baron Pollock:

"We are all of the opinion that the conviction can not be supported. The jury merely find that they have no evidence of the prisoner's knowledge, and the effect of that, in my opinion,

---

"2. You are further instructed that it was not necessary for the defendant to have had actual knowledge that the woman he was marrying was the wife of Dan Coley in order to establish his guilt; but if he was in possession of sufficient facts or circumstances which would cause him to believe it probable that Dan Coley and said woman were husband and wife, then he is chargeable with such knowledge, and it was his duty to investigate in good faith and indeavor to learn wheather or not said Dan Coley and Belle Coley were husband and wife; and if in possession of such facts or circumstances he acted without such investigation, he is guilty, and you should so return him, provided the other material allegations in the indictment are sustained." (Rep.)

is that they must be taken to have found that she did not know. But then it is said that she had means of acquiring knowledge, if she had chosen to make use of them. The means of knowledge may be very difficult or very easy. They may be so easy that a fact may be ascertained by putting a question to any one on a market day at the next market town, or they may be so difficult that the fact can scarcely by possibility be ascertained. The possession of such means of knowledge as I have first suggested might, with other circumstances, as, for example, the second marriage being contracted by the prisoner in her maiden name, warrant a finding that, having the means of acquiring knowledge, she did use them and did know, and upon such a finding the conviction might be sustained; but in the absence of such a finding by the jury I do not think we can supply the deficiency." *Regina* v. *Briggs*, Dearsly & Bell, Crown Cases, 98.

There was a division among the judges as to where rested the burden of the proof as to knowledge; but that does not enter here, as this statute makes knowledge an essential element, which devolves its proof upon the State.

In the 5th volume of "Words and Phrases Judicially Defined," under title "Knowingly," are found many judicial constructions of the word. None are applicable to this exact case, but the principles governing them are consonant with the rule stated by Chief Baron Pollock. In this case the appellant may have known such facts and circumstances as would be equivalent to actual knowledge, in that they would lead to such belief of the fact to any mind not obstinately closed to conviction. This would support a conviction, as imputing actual knowledge; but this instruction authorizes a conviction if he knew facts and circumstances rendering it probable that she was a married woman, and was negligent in pursuing inquiry. This is error.

The case is reversed, and remanded for a new trial.