Amber HURTT  *v.*  Tim HURTT and Doris Hurtt

CA 04–1298                                               216 S.W.3d 604

Court of Appeals of Arkansas
Opinion delivered November 2, 2005

38

*Eugene D. Bramblett*, for appellant.

*L. Gray Dellinger*, for appellees.

WENDELL L. GRIFFEN, Judge. Amber Hurtt appeals from an order of the Fulton County Circuit Court arising from the petition of Tim Hurtt (her former husband) to modify a divorce decree regarding custody of their minor daughter. She contends that the circuit court erred by allowing Doris Hurtt (her former mother-in-law) to intervene as a third party on the day of trial; in finding that Doris had an enforceable third-party beneficiary right in

the settlement agreement that she made with Tim Hurtt that was part of the divorce decree; in ruling that neither parent had custody of the minor child; and in ruling that the divorce decree would be modified to award custody of the minor child to Tim in the event she relocates. We hold that the language in the divorce decree which mandated that Doris would be the minor child's babysitter did not create or otherwise entitle her to be a third-party beneficiary to the divorce and its child-custody provision. We also hold that the trial court erred in finding that the relocation presumption announced in *Hollandsworth v. Knyzewski*, 344 Ark. 470, 109 S.W.3d 653 (2003), is inapplicable to this case. Accordingly, we reverse and remand for further consideration consistent with the *Hollandsworth* holding.

### *Factual History*

Amber and Tim Hurtt were married on July 21, 1995, and divorced by decree of the Fulton County Chancery Court on August 29, 2000. One daughter was born to their marriage, Lexie Jean, born April 3, 1998. The parties' settlement agreement was incorporated into the divorce decree. The portion of the decree relating to custody of Lexie states:

> Husband and Wife agree that Husband and Wife are to have Joint Custody of the minor child, LEXIE JEAN HURTT, with wife to have primary custody of the minor child. That no child support is to be paid by either party, at this time, but Husband is to keep the Health Insurance paid on LEXIE JEAN HURTT. Husband and wife will each pay one-half (½) of all other expenses for LEXIE JEAN HURTT, including, but not limited to clothing, and medical and dental expenses. DORIS HURTT is to continue babysitting LEXIE JEAN HURTT.

On March 22, 2004, Tim petitioned the circuit court to modify the divorce decree to award him full custody of Lexie and to order Amber to pay child support. His motion was prompted by Amber Hurtt's intent to relocate to New Boston, Texas (about twenty miles west of Texarkana), and remarry. Amber subsequently filed a counter-petition, which also prayed for full custody and child support. A hearing was held on July 15, 2004. The following colloquy occurred prior to the circuit court receiving testimony:

> THE COURT: . . . Four, it should be noted that in the settlement agreement, adopted in its entirety by the

Decree of Divorce, the father and mother of the child each agreed and contracted that Doris Hurtt, whom I understand to be the paternal grandmother, should continue to babysit the child. Now, unless somebody can give me convincing argument otherwise, I consider that that agreement made between the mother and father makes her a third party beneficiary of their contractual agreement made in contemplation of divorce. And I'll be glad to hear argument, pro or con.

MR. DELLINGER [COUNSEL FOR TIM]: Oh, I agree.

THE COURT: I can't see that it makes her anything else, other than a third party beneficiary.

MR. COOPER [COUNSEL FOR AMBER]: Your Honor, I don't disagree with the Court's logic, the Court and Mr. Dellinger, of course, are well aware of recent decisions by our Supreme Court involving grandparents' visitation, which this is almost tan amount [sic] to that, I think.

THE COURT: I have them here with me.

MR. COOPER: That would be the only argument that we would have in opposition to the grandmother's involvement. Of course, that statute has now been revised by our legislature and does grant some grandparent's visitation, as the Court is well aware of that.

THE COURT: Yes. For you all's guidance, I don't consider this a matter of grandparents' visitation.

MR. COOPER: No, it's not.

THE COURT: I consider this a contractual agreement made between the mother and father of the child making Doris Hurtt the babysitter. And since she is, as I understand it, the paternal grandmother, I think she's a third party beneficiary. And I consider her a necessary party to this lawsuit. I would entertain an oral motion to amend making her a party, if you want to make such.

MR. DELLINGER: Judge, I would do that to prevent further delay, unless you'd rather it be in writing, in which

event we'll continue the case and I'll file a written motion for her to intervene and assert her rights under the decree.

MR. COOPER: Your Honor, can I have just a two minute period to visit with my client?

. . .

[*after a brief recess*]

THE COURT: I believe you indicated your client does object to Doris Hurtt being made a party.

MR. COOPER: That is correct, Your Honor.

THE COURT: All right. Objection overruled. . . .

. . .

THE COURT: I might mention one thing to you all, and I don't think it's a posit really to this case, because I think this case is factually different, but I assume both of you all agree that the custodial parent who desires to move is in a situation where the move is presumed to be beneficial. Do you all both agree that's the law?

MR. DELLINGER: I think the facts will show different, Judge.

THE COURT: They may well, but there is a presumption in Arkansas Law, and it's been changed recently, there is a presumption that the move by the custodial parent is presumed to be beneficial. This is the Durham case, the Hollandsworth against Knyzewski cases that you made reference to.

MR. COOPER: Right. Yes, Your Honor, I think that is the law.

THE COURT: There isn't any question about it. As I say, I don't think it is a posit to this case because I don't think we have a custodial parent, at least that's my

understanding. We'll see what the proof develops. And, of course, the compounding problem is that again I think Doris Hurtt is a third party beneficiary of an agreement made between the mother and father of the child that she shall be the babysitter. . . .

Doris testified that she became Lexie's babysitter in August 2000 because both Amber and Tim worked. One of them would drop Lexie off in the morning and pick her up at 5:00 p.m. After Amber and Tim's divorce, Doris kept Lexie on weekdays during the day and on Saturday nights. Doris stated that, the previous May, Amber stopped bringing Lexie by her house and started taking Lexie to Amber's sister's house. Doris opined that it was in Lexie's best interests to remain in Fulton County because her family lived nearby and because she was doing well in school.

Tim stated that he lived in Camp, Arkansas, which was roughly five minutes from his parents. He stated that, when he and Amber divorced, they agreed that Doris babysitting Lexie would be the best thing for Lexie. He noted that he and Amber did not have to worry about childcare expenses or worry about putting her in daycare with strangers. After the divorce, Doris continued to keep Lexie during the day and most Saturday nights. Tim stated that he and Amber agreed to have custody of Lexie on alternating nights. Sometime later, Amber called Tim and stated that Lexie did not want to return to his residence. He talked to everyone involved and decided to give Amber an extra night with Lexie. Tim testified that on March 21, 2004, Amber called and stated that she was leaving Fulton County and taking Lexie with her. After that time, Doris did not have the opportunity to babysit; Amber's sister Brandy Hall had been keeping her. Tim also stated that he had been unable to spend Fridays with Lexie like he had previously.

On cross-examination, Tim testified that he was afraid that Amber would keep Lexie away from Doris; however, he stated that he also wanted Doris to be Lexie's babysitter because neither he nor Amber could afford daycare and because Doris agreed to keep Lexie. Upon further examination, he stated that he never knew what "primary custody" meant. Tim testified that Amber told him that the language had to be in the agreement but that "it did not mean anything." He stated that the parties never honored the written agreement and that he and Amber split custody. Under

the current arrangement, Amber kept Lexie on Mondays, Tuesdays, Wednesdays, and Fridays, while Tim kept her Thursdays, Saturdays, and Sundays.

Amber testified that she had lived in Fulton County her entire life. She remembered going into Jim Short's office when she and Tim were finalizing the divorce. Short represented both parties. After the decree was entered, she noted that the custody arrangement with Tim and Amber alternating nights with Lexie was very unstable because Lexie could not get used to either parent. That was when she asked to go to the current arrangement. Amber stated that she was aware that the settlement agreement stated that Doris would be Lexie's babysitter; however, she noted that she let Brandy watch Lexie because it was more convenient for her (Amber).

Amber testified that her immediate plans were to accept a job offer from Century Bank, where she would make $4000 a year more than she made presently. She also stated her intention to marry her boyfriend Shane Grayson, whom she met while he was working for the Bank of Salem. Amber testified that the new job would be in the New Boston, Texas, area. She has checked out the local schools and stated that the curriculum was stronger than the curriculum in Arkansas. Amber testified that she was not concerned about the safety of her daughter moving to south Arkansas and that, if she were concerned, she would not move. Amber recognized that it would be an adjustment if she and Lexie were allowed to move; however, she opined that Lexie would be fine when she started school and made new friends.

On cross-examination, Amber stated that she did not know how the language about the primary custodial parent was put into the settlement agreement. She did not remember if she told Tim that the language meant nothing. She did remember how Doris was designated as the babysitter. Amber testified that Tim was afraid that she was going to take Lexie away from his mother.

In an order entered August 21, 2004, the circuit court allowed Doris Hurtt to intervene as a third-party plaintiff in the litigation, found that she was a necessary party to the litigation, and ruled that she had the right to enforce the provision of the settlement agreement stating that she would continue to babysit Lexie. The circuit court also found that the presumption in favor of relocation of a custodial parent with primary custody, as announced in *Hollandsworth v. Knyzewski*, 344 Ark. 470, 109

S.W.3d 653 (2003), was inapplicable, based on its reasoning that neither party had primary custody of Lexie. Accordingly, the circuit court ordered that the agreement between the parties remain unchanged while Amber remained close enough to continue the agreement. However, the circuit court ordered that, if Amber relocates in a way that would make the current arrangement unworkable, the decree would be modified to award custody of Lexie to Tim.

## Standard of Review

We review traditional cases of equity, such as domestic relations proceedings, *de novo. Cole v. Cole,* 82 Ark App. 47, 110 S.W.3d 310 (2003). We affirm the circuit court's findings of fact unless those findings are clearly erroneous or clearly against the preponderance of the evidence. *Williams v. Williams,* 82 Ark. App. 294, 108 S.W.3d 629 (2003); *Powell v. Powell,* 82 Ark. App. 17, 110 S.W.3d 290 (2003). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Cole v. Cole, supra.* Because the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we defer to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Word v. Remick,* 75 Ark. App. 390, 58 S.W.3d 422 (2001). This court often states that there are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as much weight as in those involving child custody. *Id.*

## Third-Party-Beneficiary Status

Amber correctly argues that the circuit court erred in ruling that Doris Hurtt was a third-party beneficiary of the settlement agreement and, therefore, had a right to enforce the provision stating that she would continue to be Lexie's babysitter. We recognize that Arkansas courts have found that parties to a divorce can intend for third parties to be beneficiaries of their settlement agreement. *Cf. Orsini v. Commercial Nat'l Bank,* 6 Ark. App. 166, 639 S.W.2d 516 (1992) (affirming a finding of third-party-beneficiary status when the former husband and wife agreed that their daughter would be the named beneficiary in the husband's life insurance policy). However, we do not agree with the circuit court that Doris was a third-party beneficiary to the divorce

decree by virtue of the fact that she was mentioned as babysitter for her granddaughter. The fact that Doris was mentioned in the divorce decree gave her no rights, either under contract or domestic-relations law.

The circuit court continuously proclaimed that the issue was not a matter of grandparent visitation, yet the evidence shows that the only interest Doris attempted to claim was for grandparent visitation. Unless they fall within the provisions of Ark. Code Ann. § 9-13-103 (Supp. 2005), grandparents have no such right. The circuit court's finding that Doris had an enforceable right in being Lexie's babysitter circumvents the presumption stated in subsection (c)(1) of the statute: "There is a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child." Parents cannot elevate grandparents into a quasi-parental role by agreeing to name the grandparents as babysitters. The circuit court clearly erred in finding that Doris had a third-party interest in the divorce decree. We reverse on this point.

Because Doris Hurtt had no legally enforceable interest in the divorce decree and because she failed to satisfy the statutory requirements pertaining to grandparent visitation as set forth herein, we hold that the circuit court also committed reversible error when it allowed her to intervene as a third-party plaintiff. Upon remand, Doris Hurtt should be dismissed as a party to this litigation. Because we hold that the court committed error by allowing Doris Hurtt to intervene, we decline to address appellant's argument that the circuit court erred by allowing her to intervene the day of trial.

*Child Custody*

We also agree that the circuit court erred in finding that neither party had custody of Lexie. The divorce decree states that the parties are to have joint custody with primary custody vested in Amber. At no time before the modification petition was filed did the parents seek the circuit court's permission to modify the terms of the divorce decree regarding child custody. No change of circumstances was demonstrated to justify modification of the decree before appellant sought to relocate. The parties cannot modify the divorce decree without permission from the court. Absent a subsequent modification, the language in the

divorce decree is controlling. Thus, the circuit court had no basis for holding that the terms of the divorce decree had essentially been nullified by the parties' conduct.

The circuit court also erred in refusing to apply Arkansas law regarding a relocating parent, as announced in *Hollandsworth v. Knyzewski, supra*. The law regarding a modification of custody is well-settled:

> Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. The court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child. The party seeking the modification has the burden of showing a material change of circumstances sufficient to warrant a change in custody.

*Middleton v. Middleton*, 83 Ark. App. 7, 14-15, 113 S.W.3d 625, 629 (2003) (citations omitted).

Arkansas law explicitly recognizes a presumption in favor of relocation for custodial parents with primary custody. *Hollandsworth v. Knyzewski, supra*. The custodial parent does not have the obligation to prove a real advantage to the child. *Id*. Further, *Hollandsworth* explicitly states that relocation alone is not a material change in circumstances sufficient to justify a change in custody. *Id*. We have applied the *Hollandsworth* presumption where both parents had joint custody with primary custody vested in a single parent. *See Durham v. Durham*, 82 Ark. App. 562, 120 S.W.3d 129 (2003).

Here, the circuit court found that so long as appellant does not relocate, the divorce decree would govern custodial care of Lexie. However, it also found that, if appellant should relocate, appellee would have custody of Lexie by mere virtue of her relocating. In effect, the circuit court ordered a prospective change of custody, citing relocation as the triggering event, thereby finding that appellant's relocation would constitute a material change in circumstances to justify a change in circumstances. Such a finding violates our supreme court's holding that relocation, by itself, does not constitute a material change in circumstances.

Accordingly, we reverse the circuit court's order and remand this case for further action consistent with *Hollandsworth v. Knyzewski, supra*, and *Durham v. Durham, supra*.

Reversed and remanded.

VAUGHT and ROAF, JJ., agree.