Jason J. POWELL *v.* Wendell Ray LANE
& Davelynn Felkel Lane

CA 06-1355                                                    275 S.W.3d 666

Court of Appeals of Arkansas
Opinion delivered February 13, 2008

[Rehearing denied on March 19, 2008.*]

*Mary M. Rawlins*, for appellant.

*Bob Keeter, P.A.*, by: *Bob Keeter*, for appellees.

---

\* PITTMAN, C.J., and VAUGHT, HEFFLEY, and BAKER, JJ., would grant rehearing.

BRIAN S. MILLER, Judge. This is an appeal of an adoption decree granted to the petitioners, Wendell Ray Lane and Davelynn Felkel Lane, permitting Wendell to adopt Davelynn's minor son whom she conceived with Jason Powell. Powell argues on appeal that the trial court erred in granting the Lanes' petition for adoption because: (1) Powell and Davelynn are not only the minor's biological parents, but he and Davelynn are also married and their marriage has not been dissolved; (2) he was not given an opportunity to cure any failure to support or failure to have meaningful contact with the minor; (3) there was not clear and convincing evidence that he failed significantly, and without justifiable cause, to communicate with the minor; and (4) there was not clear and convincing evidence that he failed significantly, and without justifiable cause, to support the minor.

We agree with Powell that he and Davelynn were validly married and that the trial court erred in finding otherwise. In that the trial court's finding that Powell and Davelynn were never married was the determining factor regarding the remaining issues, we reverse and remand all issues presented.

*Background*

It is undisputed that, on December 31, 1996, Davelynn and Powell went to the First Baptist Church in Pencil Bluff where they were married by Reverend Bruce Tidwell. The ceremony was traditional in that Powell stood at the head of the church and Davelynn walked down the aisle in a creme-colored dress. When Davelynn reached the front of the church, she and Powell exchanged marriage vows while family and friends witnessed the ceremony. Davelynn's mother was among those present. Davelynn was pregnant by Powell at the time of the ceremony and later gave birth to a son (the minor) on June 9, 1997. She and Powell lived together as husband and wife from the date of ceremony until their separation in the Spring of 2004, almost eight years.

It is also undisputed that Davelynn and Powell obtained a marriage license before the ceremony. The marriage license, however, was not signed by Reverend Tidwell and was never returned to the county clerk for filing. Finally, Davelynn and Powell have never obtained a divorce.

In case number DR-2004-51, Davelynn petitioned the Montgomery County Circuit Court in June 2004 to establish paternity. Powell failed to answer and a default judgment was entered on July 23, 2004. The default judgment found that Powell was the minor's natural father; set a visitation schedule; required

Powell to pay child support in the amount of seventy-five dollars per week; and required Powell to pay one-half of the minor's medical expenses. Powell moved to set aside the default judgment, but that motion was denied.

Davelynn married Wendell on September 4, 2004. On March 28, 2006, they petitioned the Polk County Circuit Court for a decree allowing Wendell to adopt the minor without the consent of Powell. The case was assigned case number PR-2006-33. Davelynn consented to the adoption and alleged that Powell had failed significantly to communicate with or support the minor for at least one year. Powell denied the allegations and refused to consent to the adoption.

On May 12, 2006, Powell filed a petition for divorce against Davelynn, and Davelynn moved to dismiss the petition. Powell also moved, again, to set aside the default judgment. The cases were consolidated in the Polk County Circuit Court and heard on July 5, 2006.

At the trial, Davelynn testified that she was pregnant at the time of the wedding and that the marriage to Powell was a bad decision that she regretted. She further stated that she and Powell never intended to file the marriage license or to become legally married. In addition to providing testimony regarding the marriage ceremony with Powell, Davelynn testified that she and Wendell were married in September 2004, in Branson, Missouri. She further stated that Powell had not paid child support since December 2004 and he had not paid any part of the minor's medical bills.

Powell testified that he was his son's primary shot-giver and the primary medication-giver during the first eight years of the minor's life. He admitted that he stopped paying support to Davelynn through the Child Support Clearinghouse; however, he denied that he quit paying support because he continued to deposit the payments into a fund that he was maintaining for the minor. He claimed that he stopped paying money to the clearinghouse because he knew that doing so would prod the Child Support Enforcement Office to bring him into court. At that time, he could resolve all of the other issues with Davelynn.

Powell's sister-in-law, Melissa Powell, testified that she witnessed the marriage ceremony in which Powell and Davelynn were married. She said that there was no question that Powell and Davelynn were married because "[w]e had a wedding, they kissed,

they went down the aisle, they said, I do. That's what I seen." She testified further that Powell and Davelynn appeared to be happy on their wedding day.

Wendell Lane testified that he and Davelynn were married on September 4, 2004, and have one child together. He further stated that he wished to adopt the minor, who was the biological child of Powell and Davelynn; that the minor had resided with him since his marriage to Davelynn; and that he and Davelynn have received no financial support from Powell since their marriage.

The trial court dismissed Powell's divorce petition. In doing so, the court ruled that Davelynn and Powell were never married because they failed to have the preacher, who performed their marriage ceremony, sign the marriage license and they also failed to file it with the county clerk.

The court then granted the adoption petition of Davelynn and Wendell. In doing so, the court held that Powell's consent to the adoption was not required because, in excess of one year, he failed significantly, and without justifiable cause, to support the minor. Powell's motion for reconsideration was denied and he filed a timely appeal.

### The Marriage of Davelynn and Powell

We will accept the trial court's interpretation of a statute when no error is shown; however, we are not bound by the trial court's interpretation of the law. *Fryar v. Roberts*, 346 Ark. 432, 57 S.W.3d 727 (2001). Here, the circuit court erred in concluding that Powell and Davelynn never entered into a valid marriage. In so ruling, the court misinterpreted Ark. Code Ann. § 9-11-218 (Repl. 2002), which provides that a person obtaining a marriage license is required to return the license to the county clerk within sixty days from the date the license is issued. The statute also provides that the license must be duly executed by a person authorized to solemnize marriage in this state. *Id.*

The key to a valid marriage is solemnization, not licensing. Solemnization is defined as "[t]he performance of a formal ceremony (such as a marriage ceremony) before witnesses, as distinguished from a clandestine ceremony." *Black's Law Dictionary* 1427 (8th ed. 2004). The solemnization statute provides that a marriage is invalid unless there is solemnization, performed by some person authorized by statute to do so. See *Fryar, supra* (citing *Furth v. Furth*, 97 Ark. 272, 133 S.W. 1037 (1911)).

The marriage licensing statute, however, is merely directory and is neither mandatory nor vital to the validity of a marriage. *Fryar, supra.* The only remedy provided in the marriage licensing statute for noncompliance is that the one-hundred-dollar bond required by the statute shall remain in effect. *Id.* There is "no statute providing that a marriage is void where no license is obtained." *Id.* (quoting *DePotty v. DePotty*, 226 Ark. 881, 882, 295 S.W.2d 330, 331 (1956)). Moreover, the failure to return a marriage license does not void the marriage. *Id.* (citing *Thomas v. Thomas*, 150 Ark. 43, 53, 233 S.W. 808 (1921)).

A validly executed marriage license, that is filed in the county clerk's office, is presumptive proof of marriage. *Thomas, supra.* When this does not occur, the party wishing to prove a marriage must do so by introducing evidence of the couple's reputation as a married couple, their declarations and conduct, and other circumstances accompanying their relationship. *Id.*

This case is similar to the cases of *Fryar, supra,* and *Thomas, supra,* in which our supreme court held that the failure to file a marriage license does not void an otherwise valid marriage. In those cases, the supreme court held that valid marriages existed because they were solemnized by wedding ceremonies, although marriage licenses were not filed in either case. *Id.* In *Thomas, supra,* the supreme court noted that the couple also lived together for eight years after the ceremony and held themselves out as married. *Id.*

Powell and Davelynn were married on December 31, 1996, in a church ceremony performed by a preacher. They publicly said their marriage vows in a solemn ceremony that was conducted with all appropriate ritual. Not only was the ceremony witnessed by family and friends, but Powell and Davelynn also conducted themselves as a married couple and lived together as husband and wife for seven years after the ceremony. Their failure to file the marriage license does not void their marriage.

The dissent asserts, *sua sponte,* that Powell failed to rebut the presumption that the marriage between Davelynn and Wendell was valid. This assertion, however, was neither argued by the parties nor addressed by the trial court below. Moreover, it does not hold up under scrutiny because the marriage of Powell and Davelynn clearly rebuts any presumption of validity that may have attended Davelynn and Wendell's marriage.

The dissent further asserts, *sua sponte,* that Powell failed to prove his marriage to Davelynn because he introduced no evi-

dence regarding the licensing of the preacher who performed the ceremony. This assertion was neither argued by the parties nor addressed by the trial court below. Further, this argument contradicts the holding in *Thomas v. Thomas*, 150 Ark. 43, 233 S.W. 808 (1921). In *Thomas*, the supreme court held that the parties were validly married, although there was no testimony as to the credentials of the preacher who performed the wedding ceremony. *Id.*

Indeed, the credentials of the preacher in *Thomas* were less known than those of the preacher in the present case. In *Thomas*, Jas. Thomas and Alsie Thomas were residents of Ashley county before Alsie moved to Ft. Smith. *Id.* Jas. later traveled to Ft. Smith with a marriage license issued by the Ashley County Clerk and met Alsie at the train station. *Id.* The Arkansas Supreme Court set forth the circumstances surrounding their marriage ceremony as follows:

> [A]s they walked along the street from the train they met an old negro preacher named Mooney, who used to live in Ashley county, and Jas. Thomas procured him to marry them. Jas. Thomas turned over the marriage license to the old preacher, and they never saw it afterwards. The marriage license was never returned to the clerk by the preacher . . .

*Id.* at 52, 233 S.W. at 811. At the trial, it was shown that the "old colored preacher" whom Alsie claimed had performed the marriage ceremony had died before the date of the ceremony. In holding that the marriage between Jas. and Alsie was valid, the court held that:

> [i]t may be that [Alsie] was mistaken in the preacher who married them, but this did not overcome her testimony to the effect that they were married by a minister of the Gospel, after Jas. Thomas procured a license therefore provided by the statute.

*Id.* The court further noted that "marriage may be proved in civil cases by reputation, the declarations and conduct of the parties, and other circumstances usually accompanying that relation." *Id.* at 53, 233 S.W. at 811.

There is no question but that Powell and Davelynn obtained a marriage license and were married in a Baptist church by a "minister of the Gospel," whose credentials were never questioned. *See Thomas, supra.* Moreover, they lived together as husband and wife, with their son, for more than seven years after the

marriage ceremony. *See id.* These factors, along with all of the other undisputed evidence set forth above, show that Powell and Davelynn were validly married on December 31, 1996.

Finally, the dissent asserts, *sua sponte*, that Davelynn was seventeen at the time of the marriage ceremony and that there is no evidence in the record that her parents consented to the marriage. This assertion, however, was neither argued by the parties nor addressed by the trial court below. In fact, it was specifically waived by Davelynn at trial when, discussing her age at the time of the marriage, she testified that "I don't claim that I didn't have capacity to marry." Therefore, relying on this assertion is inappropriate.

█ For the reasons set forth above, we hold that Powell and Davelynn were validly married, and we reverse the contrary ruling of the trial court. A review of the court's order shows that all of the court's remaining rulings were based on its erroneous conclusion that Powell and Davelynn were never married. Therefore, we will not address the remaining issues but remand this case to permit the trial court to make further findings in accordance with this opinion.

Reversed and remanded.

GLADWIN, ROBBINS, GLOVER and MARSHALL, JJ., agree.

PITTMAN, C.J., VAUGHT, HEFFLEY and BAKER, JJ., dissent.

LARRY D. VAUGHT, Judge, dissenting. I agree with the majority that the determining issue in this case is whether the marriage of Jason Powell and Davelynn Lane was valid. However, I disagree with the majority's conclusion that it was. Recognizing our court's ability to affirm the trial court even if we disagree with its reasoning, *Wedin v. Wedin*, 57 Ark. App. 203, 944 S.W.2d 847 (1997), I would hold that the trial court's finding — that the Powell–Davelynn marriage was not valid — was not clearly erroneous and would affirm. Therefore, I dissent.

While the trial court erred in relying on the failure to register the marriage license with the county clerk as a basis for finding the marriage of Powell and Davelynn invalid, our analysis does not end there. Reviewing the case de novo, I note that there was evidence introduced that supports the trial court's conclusion that the Powell–Davelynn Lane marriage was not valid.

All parties agree that on December 31, 1996, a wedding ceremony was performed between Powell and Davelynn. Several witnesses described the ceremony right down to the cream-colored dress worn by Davelynn. Family and friends were present. However, that is not enough, on its face, to support a conclusion that the parties were lawfully married on that date. In order for the marriage to be valid it must be properly solemnized. Ark. Code Ann. § 9-11-213 (Supp. 2007). There was no evidence that the preacher who performed the ceremony on December 31, 1996, was licensed, with his license recorded, as required by Arkansas Code Annotated section 9-11-214 (Repl. 2002).

In addition to the requirement that a competent officiator solemnize the ceremony, competent parties, who consent to being married, are also required. Ark. Code Ann. § 9-11-101 (Repl. 2002). Section 9-11-101 defines marriage as a civil contract "to which the consent of the parties capable in law of contracting is necessary." Ark. Code Ann. § 9-11-101. The evidence reflects that Davelynn was under age at the time of the wedding. More-over, there is nothing in the record to suggest that parental consent was obtained, and by law, it was required. Ark. Code Ann. § 9-11-102 (Supp. 2007). While Davelynn testified that she did not claim a lack of capacity to marry, that is not her determination to make.

In any event, Davelynn's testimony was that there was never any intent for a valid marriage; that she and Powell were "play acting" and never intended to file the marriage license; that "the preacher never even saw the license"; and that it was a bad decision that she regretted. She eventually filed a paternity action against Powell alleging that the child was born out of wedlock. Powell did not answer, and a default was entered.

Considering all of the evidence, I cannot say that the trial court's finding that there was no valid marriage between Powell and Davelynn was clearly erroneous. With this conclusion, it is easy to hold that the marriage between Davelynn and Wendell Lane is valid and that Wendell Lane is a step-parent. Since Powell has not contributed to the support of the child for over a year, his consent to the adoption is not necessary. Therefore, I would also affirm the other issues in this case.

PITTMAN, C.J., and HEFFLEY, J., join in this dissent.

KAREN R. BAKER, Judge, dissenting. Nine judges agree that the appeal before us is a challenge to the trial court's entry

of an adoption decree. Beginning with that premise, we must first look at the order of adoption and appellant's assertions of error. Three of appellant's four points allege that the trial court erred in finding that the consent of appellant, as the natural father, was not required. The majority refuses to address these three assertions that the adoption was in error. Instead, it concludes as follows:

> For the reasons set forth above, we hold that Powell and Davelynn were validly married and we reverse the contrary ruling of the trial court. A review of the court's order shows that all of the court's remaining rulings were based on its erroneous conclusion that Powell and Davelynn were never married. Therefore, we will not address the remaining issues but remand for this case to permit the trial court to make further findings in accordance with this opinion.

The majority's reasoning fails to identify the means by which the trial court's determination that there was no valid marriage between Ms. Lane and Mr. Powell invalidated the court's remaining rulings regarding the adoption. This omission is particularly perplexing given the trial court's following admonition to the parties in a letter dated July 31, 2006, denying Mr. Powell's motion for reconsideration or a new trial: "I remind the parties that even if the marriage was valid, the defendant has failed to meet the basic requirements of A.C.A. § 9-9-207(ii) so as to require consent to an adoption. This requirement overrides consent as otherwise required by A.C.A. § 9-9-206(a)(2)." Section 9-9-206(a)(2) requires consent if the parties were married either before or after the conception of the child. The trial court correctly reasoned that even if Mr. Powell had been married to Ms. Lane, the marriage would not excuse his abandonment of his child. Mr. Powell abandoned his son. That abandonment, by his own failure to support without justifiable cause, is the reason his consent was not required.

Perhaps the majority ignores the remaining issues because our standard of review would require that we affirm the trial court's decision that appellant had failed to support his minor child in excess of one year. It would certainly be awkward to affirm the trial court's ruling that appellant's consent was not required for the adoption, but nevertheless reverse the adoption based upon the objections of the party who had no statutory right to object. Thus the majority does not address the only ruling that is truly at issue in this case; whether or not appellant's consent to the adoption was required.

We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See Thomas v. Avant,* 370 Ark. 377, 260 S.W.3d 266 (2007); *Freeman v. Rushton,* 360 Ark. 445, 202 S.W.3d 485 (2005). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *See Artman v. Hoy,* 370 Ark. 131, 257 S.W.3d 864 (2007). When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *See Devine v. Martens,* 371 Ark. 60, 263 S.W.3d 515 (2007).

The order of adoption contained the judge's conclusion that the father's consent was not required under Arkansas Code Annotated § 9-9-207(a)(2) "due to his failure to provide support under the judgment in Montgomery County DR-2004-51." This judgment was the default judgment entered on July 23, 2004, that established Mr. Powell as the natural father of the child born out-of-wedlock, set a visitation schedule, required Mr. Powell to pay child support in the amount of seventy-five dollars per week, and required him to pay one-half of the minor's medical expenses. The trial court found that it was undisputed that the last child support paid pursuant to that decree was in December 2004. This finding is supported by appellant's statement that he made no payments after December 2004, nor paid any medicals bills, and Mr. Lane's testimony that he and Ms. Lane had received no support from Mr. Powell since the couple's marriage in September 2004. As the majority notes, appellant admitted that he stopped paying support to Ms. Lane pursuant to the judgment, and, instead, deposited the readily available funds into a savings account.

Although appellant asserts that he was not given the opportunity to cure his failure to support, he also argues on appeal that "even if Mr. Powell paid a substantial amount of the past due payments, unless he **also** reestablished a relationship with the child, the adoption and termination could still go forward." (Emphasis in appellant's brief.) He claims he had a statutory right to have the opportunity to cure because the child support order entered in 2004 failed to include the notification clause that his failure to support or visit the child for at least one year would provide Ms. Lane with the right to initiate proceedings to terminate his parental rights. The statutory provision upon which he bases his argument provides as follows:

(c) In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued under this subchapter on any ground provided by other law for termination of the relationship, or on the following grounds:

(1) Abandonment.

(A) A child support order shall provide notice to the non-custodial parent that failure to pay child support or to visit the child for at least one (1) year shall provide the custodial parent with the right to initiate proceedings to terminate the parental rights of the non-custodial parent.

(B) If the notification clause required by subdivision (c)(1)(A) of this section is not in the child support order, the custodial parent, prior to termination of parental rights, shall notify the non-custodial parent that he or she intends to petition the court to terminate parental rights.

(C)(i) The non-custodial parent shall have three (3) months from the filing of the petition to pay a substantial amount of past due payments owed and to establish a relationship with his or her child or children.

(ii) Once the requirements under subdivision (c)(1)(C)(i) of this section are met, the custodial parent shall not be permitted to proceed with the adoption nor the termination of parental rights of the non-custodial parent.

(iii) The court may terminate parental rights of the non-custodial parent upon a showing that:

(a) Child support payments have not been made for one (1) year or the non-custodial parent has not visited the child in the preceding year and the non-custodial parent has not fulfilled the requirements of subdivision (c)(1)(C)(i) of this section; and

(b) It would be in the best interest of the child to terminate the parental relationship.

Ark. Code Ann. § 9-9-220 (Repl. 2002 & Supp. 2007).

Mr. Powell argues that, according to this statute, he had three months to cure his nonpayment of support. The petition for adoption was filed in March 2006. The order of adoption was

entered on July 24, 2006. More than three months had passed from the time that Ms. and Mr. Lane filed the petition until the entry of the adoption order. As discussed above, Mr. Powell had money in an account but still chose to withhold the support obligation. Mr. Powell was afforded the statutory opportunity to cure his nonsupport. He merely refused to cure his failure.

All of this evidence supports the trial court's finding that Mr. Powell's consent was not required. Appellant admitted that he chose to place the support required by the July 2004 court order into a savings account rather than provide the support pursuant to the judgment. It was undisputed that no payment was made after December 2004 resulting in more than a year of nonsupport. Mr. Powell had more than three months to cure his failure to support, but he chose not to do so.

Accordingly, the trial court was correct in permitting Wendell Lane to adopt the minor without Mr. Powell's consent because Mr. Powell failed significantly, and without justifiable cause, to support the minor. A person wishing to adopt a child without the consent of the parent must prove that consent is unnecessary by clear and convincing evidence. *In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997). A circuit court's finding that consent is unnecessary due to a failure to support the child will not be reversed unless clearly erroneous. *In re Adoption of K.F.H. and K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gregg v. Arkansas Dep't of Human Servs.*, 58 Ark. App. 337, 952 S.W.2d 183 (1997). We defer to the trial court to determine credibility because it is in the best position to do so. *Hurtt v. Hurtt*, 93 Ark. App. 37, 216 S.W.3d 604 (2005).

Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2002) provides that "consent to an adoption is not required of . . . [a] parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause . . . to provide for the care and support of the child as required by law or judicial decree." "Significantly and without justifiable cause" does not mean that the parent totally failed to make payments. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). It only means that the failure is "meaningful, important, and willful." *Id.*

As the majority acknowledges, Mr. Powell asserts that he stopped paying the court ordered child support because visitation between him and his son was being withheld and he wanted to come back to court. This is not legally justifiable because the duty to support cannot be excused based on another person's conduct unless such conduct prevents the payment of support. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). Nothing prevented Powell from tendering his child support payments to the clearinghouse rather than a savings account.

Accordingly, it was not error for the court to find that Mr. Powell failed significantly, and without justifiable cause, to support the minor, rendering his consent to the adoption unnecessary. The majority's failure to address the issue of whether the trial court erred in finding that Mr. Powell's consent was required is further complicated by its faulty analysis and reversal of the adoption order, based upon its conclusion that Mr. Powell and Ms. Lane were married.

Contrary to the majority's position, the question is not whether a valid marriage existed between Ms. Lane and Mr. Powell, but whether Mr. Powell had overcome the presumption that the marriage between Davelynn and Wendell Lane is valid.[1] In the case before us, there is no question that the Lanes' marriage was properly solemnized. Appellant challenges the validity of the Lanes' marriage by claiming that it is bigamous.

While Mr. Powell's argument focuses upon the facts and circumstances surrounding the ceremonial acts on December 31,

---

[1] Contrary to the trial court's finding, a failure to file the marriage license does not void a marriage. *See Fryar v. Roberts*, 346 Ark. 432, 57 S.W.3d 727 (2001). Therefore, the trial court erred in finding that, because the marriage license was not filed, Mr. Powell and Ms. Lane were never married. However, the trial court's error in finding the marriage between Mr. Powell and Ms. Lane invalid due to failure to comply with the marriage licensing statutes does not end our inquiry. Instead, on appeal our review must determine whether the trial court was correct in granting the decree of adoption, and if the trial court reached the correct result, albeit for the wrong reason, we affirm. *See, First Sec. Bank v. Estate of Leonard*, 369 Ark. 213, 253 S.W.3d 434 (2007); *Office of Child Support Enforcement v. Pyron*, 363 Ark. 521, 215 S.W.3d 637 (2005). This is true even where the argument was not raised below. *Simmons First Nat'l Bank v. Wells*, 279 Ark. 204, 650 S.W.2d 236 (1983). While the majority appears to find an impropriety with this approach, evident from its "*sua sponte*" references, our standard of review requires our de novo review of this probate proceeding. The majority's complete disregard of this standard results in its erroneous decision and the inevitable hardship the disposition imposes upon this child.

1996, between him and Ms. Lane, our review must focus on the trial court's determination that the marriage between the Lanes was valid. This is particularly so in view of the long-standing presumption against deliberate bigamy, *Bruno v. Bruno*, 221 Ark. 759, 256 S.W.2d 341 (1953), and the common law presumption of the validity of the second marriage, *Cole v. Cole*, 249 Ark. 824, 462 S.W.2d 213 (1971).

Because there is a longstanding presumption of law that a marriage entered in due form is valid, the burden of proving a marriage invalid is upon the party attacking its validity. *See Clark v. Clark*, 19 Ark. App. 280, 719 S.W.2d 712 (1986). This presumption is so strong, it has been referred to as one of the strongest presumptions in the law. *Martin v. Martin*, 212 Ark. 204, 205 S.W.2d 189 (1947).

The burden, therefore, is upon appellant to overcome the presumption of the validity of the marriage between Wendell and Davelynn Lane. Mr. Powell cannot meet this burden by relying solely on the fact that a ceremony was conducted between him and Ms. Lane and his claim that the ceremony resulted in a marriage that is also presumed to be valid. Our supreme court has addressed the issue of the conflict between the presumption of the validity of a first marriage and the presumption of the validity of a second marriage many times and consistently held the presumption of the validity of the first marriage is not sufficient to overcome the presumption of the validity of a second marriage. In one such case, handed down in December 1928, the supreme court stated:

> Among other things, the court there said, quoting from another authority: "There was also a presumption that appellant's marriage with Jane Honeycutt was lawful, innocent, and not criminal. It is supposed that a man will not incur the guilt of felony and danger which attends it by marrying another woman during the life of one to whom he has previously been lawfully married."

This court, in the same case, also quoted with approval the following:

> "So strong is the presumption, and the law is so positive in requiring the party who asserts the illegality of a marriage to take the burden of proving it, that such requirement obtains, even though it involves the proving of a negative, and although it is shown that one of the parties had contracted a previous marriage, and the existence

of the wife or husband of the former marriage at the time of the second marriage is established by proof, it is not sufficient to overcome the presumption of the validity of the second marriage.
. . .

*Spears v. Spears*, 178 Ark. 720, 731, 12 S.W.2d 875, 878-79 (1928).

In a case, cited with approval in *Spears, id.,* handed down the preceding January of that same year the supreme court stated this principle even more directly, holding:

From these authorities we feel justified in again stating the law to be that, where a second marriage is established in form according to law, a presumption arises in favor of its validity as against a former marriage, even though the husband or wife of the former marriage is living at the time, and that this presumption is not overcome by the presumption of law in favor of the continuance of the first marital relation . . . .

*Lathan v. Lathan*, 175 Ark. 1037, 1044, 1 S.W.2d 67, 70 (1928).

More recently this court explained our role in evaluating a claim of deliberate bigamy emphasizing the strong presumptions in the validity of the second marriage:

While it is true that a bigamous marriage is void from its inception, [I]t is a longstanding presumption of law that a marriage entered in due form is valid, and the burden of proving a marriage is invalid is upon the party attacking its validity.

*Jessie v. Jessie*, 53 Ark. App. 188, 193-94, 920 S.W.2d 874, 877 (1996).

In the case before us, the trial court in August 2006, consolidated the paternity case and the adoption case in an order that states that the cases involve common questions of law and fact and should be consolidated. In its letter to the parties, the court states, "I conclude that the parties never entered into a valid marriage at any time thereafter" the conception of the child.

The trial court in this case was called upon to render void a marriage that unquestionably comported with the solemnization statute and was presumed valid as against the former marriage. The evidence before him included a petition filed by Ms. Lane alleging that she and Mr. Powell were not married at the time of the

conception and birth of the child and asking the court to establish paternity for her out-of-wedlock child. The subsequent court order found that the child in this case was born out-of-wedlock.

Despite appellant's contention in this case that he and the mother were married at the time the order establishing paternity and child support was entered, appellant never questioned that court order and paid child support pursuant to that order until he abandoned his child support obligations altogether. Although appellant relies heavily upon the evidence regarding the performance of a ceremony between him and Ms. Lane by a preacher, and emphasizes that the marriage vows and ceremony were conducted with all appropriate ritual, the record contains no reference to this minister's credentials nor registration filed pursuant to § 9-11-214(a), which provides:

> No minister of the gospel or priest of any religious sect or denomination shall be authorized to solemnize the rites of matrimony in this state until the minister or priest has caused to be recorded his or her license or credentials of his or her clerical character in the office of the county clerk of some county in this state. The minister or priest must also have obtained from the clerk a certificate, under his or her hand and seal, that the credentials are duly recorded in his or her office.

This statute, as part of the solemnization requirements, is mandatory, unlike the licensing statutes which are merely directory. *Fryar v. Roberts, supra; see Brooks v. State,* 74 Ark. 58, 84 SW 1033 (1905) (holding an alleged first marriage was not proved and that when this fact is sought to be established by the evidence of persons present at the marriage, such testimony must show, not only the fact of the solemnization of the marriage, but the official character of the person performing it).

Furthermore, although the majority claims that Ms. Lane testified that "the marriage to Powell was a bad decision that she regretted," Ms. Lane actually testified that the ceremony was play acting, that she and Mr. Powell never intended to file the license, that they never presented the license to the celebrant, and that they believed that just going through the ceremony would not result in a legally binding marriage. She explained to the judge that she was overwhelmed as a pregnant teenager facing Mr. Powell's complaints that he had been trapped and simultaneously experiencing her grandfather's failing health and anticipated passing. The deci-

sion she regretted was going through the sham ceremony. Mr. Powell's testimony is devoid of any attempt to dispute her direct testimony that neither party wanted nor intended to marry.

While the majority accurately states that Ms. Lane asserted at trial that "I don't claim that I didn't have capacity to marry," it mischaracterizes her statement as a waiver of an affirmative defense. In her testimony, that statement is immediately followed with her explanation that "I claim . . . that we were never married." Her statements were designed to clarify her position, consistent with her petition for, and resultant order of, paternity that she and Mr. Powell were never married. She did not claim that the marriage was voidable because of her lack of capacity to enter the marriage but that there was never any marriage to find voidable or to dissolve.

However, the fact that she was only seventeen at the time of the ceremony requires us to examine the issue of capacity in our analysis of whether Mr. Powell overcame the presumption of the validity of the Lanes' marriage. At the time the ceremony was performed, Ms. Lane was seventeen and Mr. Powell was twenty-two. The statute addressing the minimum age for marriage contracts and parental consent in effect on the date of the ceremony required the consent of both of Ms. Lane's parents unless the parents had been divorced and an award of exclusive jurisdiction or custody had been surrendered by one of the parents through abandonment or desertion. *See* Ark. Code Ann. § 9-11-102 (Repl. 2002 & Supp. 2007). Ms. Lane testified that neither of her parents signed the application for the marriage license. Ms. Lane's mother testified at trial. She stated that she was present at the ceremony but made no reference to her consent. Other testimony established that Ms. Lane's mother married Adam Strothers in June 2005, but no evidence explains the absence of Ms. Lane's father nor compliance with the statutory mandate of consent. Capacity to marry is one aspect we must consider in evaluating whether Mr. Powell met his burden.

Therefore, we should hold that the proof presented by Mr. Powell was not sufficient to overcome the strong presumption in favor of the validity of the second marriage between Wendell and Davelynn Lane and affirm the trial court's entry of adoption.

The majority's error in reasoning leads it to the wrong conclusion. Sadly, its decision imposes a great burden on the child whose interests we are bound to protect. The effect of the decision

is to render his mother and the only man he has known as his father these four years subject to prosecution for bigamy. His sibling is rendered illegitimate under the laws of Arkansas. Issues such as insurance coverage, filing status and deductions and rates for tax purposes, contractual obligations, ownership of assets are all affected by the majority's decision and all affect the stability and resources available to this child. The harm to the child's interests by this decision is palpable, and Mr. Powell never even challenged the trial court's finding that the adoption was in the child's best interest.

The disposition of this matter creates additional burdens regarding the procedural aftermath of the appeal. With no guidance from the majority as to what action the trial court should take, it leaves Mr. and Ms. Lane in a legal morass to sort through at additional cost — monetary and emotional in nature. Ordinarily, we would treat a default judgment as binding. For collateral estoppel purposes, a "judgment by default is just as binding and enforceable as judgment entered after a trial on the merits." *Reyes v. Jackson*, 43 Ark. App. 142, 861 S.W.2d 554 (1993). *Accord Arnold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365 (applying *res judicata* to default judgment), *cert. denied*, 513 U.S. 990 (1994); *Davidson v. Hartsfield*, 250 Ark. 1072, 468 S.W.2d 774, 779 (1971); *Murry v. Mason*, 42 Ark. App. 48, 852 S.W.2d 830 (1993); *Williams v. Connecticut General Life Ins. Co.*, 26 Ark. App. 59, 759 S.W.2d 815 (1988)(applying *res judicata* to default judgment); *Meisch v. Brady*, 270 Ark. 652, 657, 606 S.W.2d 112, 114 (Ark. App. 1980). While the order of adoption incorporates a finding that the trial court refused to set aside the default judgment of paternity, the refusal itself is not challenged on appeal nor is the original motion to set aside even included in the briefs.

The legal questions raised by the decision are painfully contorted. Does the majority's directive somehow confer jurisdiction on the trial court to set aside the default judgment? Is the majority actually ordering the trial judge to set aside the default judgment, finding that it had abused its discretion? Are due process rights violated by the majority in reversing an order not appealed by appellant?

The stress imposed upon this child's family by this decision would be difficult to bear under the best of circumstances, but the testimony of Mr. Powell indicates that the circumstances this child faces are less than optimal. In describing his son's medical condition and the effect that stress had on him, Mr. Powell said that even

a buzzer at a basketball game can trigger a chemical reaction leading to violent vomiting followed by a lethargic, comatose-like state. Yet the adoption decree so clearly in this child's best interest, is reversed by the majority solely due to the objections of a man whose consent to the adoption was not required because of his abject failure to support this child.

The trial court in this case correctly found that Mr. Powell's consent to this adoption was not required. The trial court's decision to grant Mr. Lane's adoption petition was correct; was clearly in the best interest of the child; and should be affirmed by this court.

Accordingly, I dissent.